**Application of Rolf G. GIDLOW and Jolyon A. Stein.**

**Application of Rolf G. GIDLOW and Robert L. Teders.**

**Patent Appeal Nos. 7346, 7347.**

United States Court of Customs and Patent Appeals.

May 20, 1965.

Thomas A. Lennon, Minneapolis, Minn. (James W. Dent, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

WORLEY, Chief Judge.

These two appeals are from decisions of the Board of Appeals affirming the examiner's rejection of all the claims in appellants' applications [1] directed to agglomerated flour products and methods for their manufacture. While separate records and briefs were filed in each appeal, the issues are so closely related they will be disposed of in a single opinion.

The Griffin patent,[2] the primary basis for the rejection in each appeal, relates to a process for converting certain powdered materials into agglomerated products which are of lower bulk density and capable of more rapid solution or dispersion than in powdered form. Griffin states:

"* * * The powdered materials so converted are those which become self-adherent at their surfaces when

1. Involved in PA 7346 is the application of Gidlow and Stein, serial No. 36,942, filed June 17, 1960, for "Agglomerated Pancake, Waffle and Bread Mixes and Method of Making."

Involved in PA 7347 is the application of Gidlow and Teders, serial No. 36,946,

filed June 17, 1960, for "Agglomerated Flour Products and Method of Making."

2. U. S. Patent No. 2,893,871, issued July 7, 1959.

the surfaces are moistened. Examples are found chiefly in the field of organic materials including food products, such as milk powders produced by drying skim milk, whole milk or malted milk, powdered cocoa, powdered food mixes such as for cakes and pancakes, and various other foods in powder form, such as baby foods, having a content of milk, sugar or other agglutinant making them susceptible to the new treatment.

"In the case of milk, for example, the conversion of the powder to the agglomerated state makes it possible to reconstitute the milk more rapidly than with present commercial products upon immersion in water. The same improvement is obtained in essentially the same degree with most materials of the class described, and in any case the material when thus put into agglomerate form can be reconstituted (if a dehydrated material) or can otherwise be put into solution or dispersion more rapidly than can the powdered form of the same material.

&ast; &ast; &ast; &ast; &ast; &ast;

"The process is described with particular reference to the treatment of dried skim milk, with sufficient description of process variables and their determinants to enable skilled persons to employ the process and apparatus with other materials of the subject class."

In Griffin, the material to be agglomerated falls freely in a thin stream between two converging jets of moistening vapor. After describing a process of agglomerating dried skim milk powder, in which the moisture uptake is about 0.5–3% on the weight of starting material, Griffin says:

"The process variables require no extensive change when the process is employed with other materials which it is capable of agglomerizing by reason of their capacity for becoming self-adherent when super-ficially moistened. Its key step is the combined moistening and tumbling in a zone of turbulence which confines the powder particles so as to afford intimate contact in their turbulent state, that zone being created when a powdered material is fed into the bottom of the trough formed by two converging and colliding low pressure jets of moistening fluid."

While steam is a preferred moistening fluid, Griffin discloses that water jets can also be used. The optimum feed rate of the powder and moistening fluid, as well as the optimum angle of incidence of the jets, can vary with different powders according to their density and requirement of moisture for good adhesion. Variation of the angle of incidence of the jets or the feed rates varies the bulk density of the product.

In addition to describing the agglomeration of a single powdered material, such as skim milk, Griffin discloses that his process is suitable for treating two or more component powders—a mixture of cocoa and sugar is given as an example.

Griffin also discloses a method of forming larger aggregates which are firmer in nature. In discussing that method, he says:

"&ast; &ast; &ast; The advantage is first that, since many of these aggregates are over-size in relation to a desirable maximum size of aggregate in the end-product, they afford leeway for a controlled partial break-up in a finishing operation to bring the mass as desired to any of several different maximum sizes of aggregate, giving different bulk densities for the end-product. This also yields a larger content of aggregates of that maximum size or near to it. Further, the aggregates formed by break-up of these over-size aggregates are firmer and better maintain themselves against breakage in packing and shipping. They nevertheless have ample porosity to give quick dispersal in water so as to qualify well as an 'instant' product. This is not to say that the immediate product

here referred to as over-size is not a useful product, but only that these initial aggregates are so large that the bulk density is lower than is usually desired commercially. It would create too large a package for any unit weight commonly sold, and would increase shipping costs."

The oversize agglomerates can be broken up in a subsequent step, so that the bulk of the material can be recovered as an agglomerated product of a "bulk density chosen to meet commercial desiderata."

Griffin describes his final product thus:

" * * * It is sufficiently free-flowing and free of fines for purposes of handling and packaging. While the agglomerates are relatively fragile as compared with some single-bead, unagglomerated products, they maintain themselves adequately in handling and in packaging if reasonable care is taken to avoid long continued or often repeated agitation; and they do so similarly in shipment if the packages are well filled. The bulk density is low.

* * * * * *

" * * * The clusters are of irregular size and shape, and in form resemble irregular clusters of grapes. The component particles are not compacted into a solid pellet but are in surface contact, with large inter-spaces. When immersed in the solvent or suspending liquid, the clusters are readily penetrated and the bonds are broken, and the particles disperse freely and either dissolve or go into fine suspension, as the case may be, without any tendency to unite in a thick mass. * * * "

With that background information, we turn to a discussion of the respective applications and the rejections and arguments made.

*Appeal No. 7346*

The problem appellants faced in serial No. 36,942 was that certain pre-mixed food products known to the prior art, such as pancake mixes containing flour in particulate form and a "small percent-age" of sugar, tended to be dusty, poorly dispersible in liquids and of poor flow characteristics. The application relates to a method of agglomerating cereal flours containing at least 3.5% soluble agglutinating or binding agent, such as sugar, to convert the mixture into a free flowing, readily dispersible form. That method involves dispersing and agitating the soluble agglutinating particles and flour in a humid atmosphere, such as steam, so the agglutinate particle surface becomes adhesive, collides with the flour particles, and agglomeration is achieved. The end product has a loose, unpacked bulk density greater than, or equal to, that of the unagglomerated mixture; a packed bulk density less than that of the unagglomerated mixture; and is characterized by a multiplicity of voids and interstices.

Claim 19 is illustrative:

"19. In the agglomeration of dry pulverulent flour base material containing at least 3.5% functional soluble agglutinant, the method comprising dispersing said material in finely divided particulate form in a humid atmosphere thereby uniformly wetting the surfaces of said particles and forming adhesive surfaces on the particles of soluble agglutinant, maintaining the flour particles in a substantially ungelatinized state, and agitating the dispersed wetted particles while maintaining them in close proximity to one another to cause repeated random collision and agglomeration of said wetted particles, the degree of agitation being sufficiently vigorous to form agglomerates having a loose bulk density not less than the loose bulk density of the starting material."

The remaining claims differ from claim 19 in placing an upper limit of 15% on the soluble agglutinant; in restricting the increase of moisture content of the agglomerate to less than 10% (claims 21 and 23); and in reciting the use of a blade mixer rotating at 500–3000 rpm to cause collision of the particles

(claim 26). In addition, two product claims are on appeal, one reciting the product in terms of certain physical characteristics, the other reciting the product formed by the process where moisture uptake is less than 10%.

The examiner rejected all appealed claims as unpatentable over Griffin, pointing out that Griffin discloses processes for the agglomeration of powdered food mixes, such as cake and pancake mixes. In addition, claims 19, 20 and 26 were rejected as too broad in failing to set forth the extent of moisturization of the agglomerate. The board agreed.

Appellants concede that Griffin's food mixes, such as for cakes and pancakes, are those which conventionally contain flour and a soluble agglutinate such as sugar. They note, however, that while Griffin gives several specific examples of products successfully agglomerated by his method, he nowhere specifically exemplifies a process of agglomerating a flour-containing product. Moreover, they urge that two affidavits establish that Griffin's method is incapable of properly agglomerating a mixture containing 90% wheat flour and 10% sugar falling within the scope of their claims. Finally, they argue that Griffin obtains a final product having a bulk density less than that of the starting material, while the loose bulk density of their product is equal to or greater than the loose bulk density of the loose starting material, and the packed bulk density of their product is less than that of the packed starting material.

We have considered the record in light of appellants' contentions, but we are satisfied Griffin contains more than adequate disclosure to render the claimed processes and products obvious to one of ordinary skill in this particular field. We agree with the examiner and solicitor that the limited information supplied by the affidavits is insufficient to establish unobviousness of the claimed subject matter. The affidavits report but one experiment using 90% wheat flour and 10% sugar and do not establish that it was conducted within some of the parameter limits defined by Griffin. Moreover, the general statement in the affidavits that "various changes were made in the operational conditions in an attempt to somehow successfully agglomerate the material" does not shed further light on the matter.

In considering the issue of any differences in the bulk densities of appellants' product and that of Griffin we do not think that Griffin's final product, as described above, is necessarily one of lower *loose* bulk density than possessed by unpacked starting materials. Further, we note Griffin contemplates varying bulk density of his product to meet commercial desiderata and, as pointed out by the board, Griffin otherwise describes his product as having characteristics—free flowing, readily dispersible, large void space—substantially similar to appellants' product. In our view, appellants' claims do not distinguish in an unobvious manner over Griffin.

As noted earlier, the examiner rejected claims 19, 20 and 26 as too broad in failing to set forth the amount of moisture uptake by the product. While we agree with appellants that they are entitled to claim as broadly as they disclose, we also agree with the examiner and the board that the application disclosure requires maintaining moisture uptake below 10%, as evidenced by the following statements:

" * * * Because of the highly soluble nature of the binder, it is necessary that the amount of moisture added to the mix be carefully controlled to prevent over-moisturizing of the soluble agglutinates or sugars, since an adhesive surface film is sufficient to effect the agglomeration. * * *

* * * * * *

" * * * In any even[t], the moisture content of the mixture being agglomerated should not be increased beyond about 10%, and in most instances is preferably usually less and within the condensate range given above. Because of the criticality of moisture to be added, it is almost essential that the moisture be added in the form of humid air, water vapor

or steam since it is much easier to control the amount of wetting when the moisture is added in the form of a condensate than it is when the particles are treated with moisture in liquid form. * * * "

That conclusion is confirmed by appellants' brief:

" * * * To accomplish this, the moisture content of the mixture being agglomerated should not be increased above about 10 per cent or, expressed in other terms, the amount of moisture added to the mixture should range from .0075 to 0.06 pounds per pound of product."

■ The rejection of claims 19, 20 and 26 as broader than the invention disclosed, and of claims 19–24, 26, 29 and 30 as unpatentable over the prior art, is affirmed.

### Appeal No. 7347

In serial No. 36,946, appellants faced a problem similar to that in serial No. 36,942. Flour, in its usual form, is dusty, poorly dispersible in liquid solutions such as gravies, and tends to collect in lumps rather than form a homogeneous batter or dough. The application relates to a method of agglomerating cereal flours per se into free flowing, dustless, more readily wettable aggregates. The method involves dispersing and agitating the flour particles in an atmosphere containing sufficient moisture to hydrate and glutenize the protein material in the flour. The surface of the flour particle thereby becomes adhesive, and agglomeration is achieved upon collision with other particles. Soluble agglutinates, such as sugar, may be admixed with the flour up to 3.5% without functioning as the agglutinate for the flour to any appreciable extent. A greater amount of moisture, on the order of 10–30% of the weight of starting material, is required to agglomerate flour in the absence of soluble agglutinate than is required when more than 3.5% soluble agglutinate is present. The moisture is supplied by either steam or atomized water alone, or in combination. The end product, agglomerated flour, has characteristics similar to the product obtained in Appeal No. 7346.

Claim 19 is illustrative:

"19. In the agglomeration of dry pulverulent flour base material, the method comprising dispersing said material in finely divided particulate form in a humid atmosphere thereby uniformly wetting the surfaces of said particles and forming adhesive gluten on the surface of the flour particles while maintaining the flour particles in a substantially ungelatinized state, and increasing the moisture content of the material within the range of 10–30%, and agitating the dispersed wetted particles while maintaining them in close proximity to one another to cause repeated random collision and agglomeration thereof, the degree of agitation being sufficiently vigorous to for agglomerates having a loose bulk density not less than the loose bulk density of the starting material."

Claims 17, 18 and 20 differ from claim 19 in reciting that less than 3.5% soluble agglutinate is present. In addition, claim 17 places no percentage limit on moisture uptake, and claim 18 places no limit on bulk density of the end product. The product claims 21 and 23 are similar to those in Appeal No. 7346.

The examiner rejected all appealed claims as unpatentable over Griffin, noting that flour obviously is a component of Griffin's food mixes. The board affirmed that rejection, as well as the rejections of claims 17 and 18 as unduly broad in failing to specify the extent of moisturization and bulk density, respectively.

In addition to arguments similar to those presented in Appeal No. 7346 relating to bulk density, appellants urge that no one reading Griffin would conclude that flour particles per se could

be successfully agglomerated by the method he discloses. Moreover, appellants argue Griffin does not teach what amount of moisture is necessary to agglomerate flour, but discloses only a moisture increase of about 3% when agglomerating milk powder. Appellants rely on affidavits identical to those in Appeal No. 7346 to establish that flour per se cannot be agglomerated by Griffin's process.

We note that, according to the excerpts quoted above, Griffin contemplates agglomeration of powdered materials "which become self-adherent at their surfaces when moistened." The process is exemplified with milk powder alone, and the agglomeration of flour mixes is also taught. We do not think that one of ordinary skill in this art would be unaware that flour particles themselves are capable of becoming "self-adherent at their surfaces when moistened," or incapable of determining the amount of moisture required to accomplish that result. Griffin particularly recognizes that feed rate of the moistening fluid must vary with different powders according to their moisture absorption and requirement of moisture for good adhesion, and discloses that steam or atomized water may be used as necessary. It is apparent that Griffin was of the opinion he had supplied sufficient description of process variables to enable those skilled in the art to employ the agglomeration process with other materials which are agglutinants. While we appreciate appellants' arguments, we find nothing in the record before us, including the limited information supplied by the affidavits, to convince us that Griffin does not serve as adequate suggestion of the claimed subject matter as a whole, or that the board erred in affirming the rejection of claims 17–21, and 23.

In view of our conclusion, it is unnecessary to discuss the other rejections of record in Appeal No. 7347. For the above reasons, as well as those in Appeal No. 7346, the decision is affirmed.

Affirmed.