52 CCPA

**Application of Reynold E. HOLMEN.**
**Patent Appeal No. 7308.**

United States Court of Customs
and Patent Appeals.

July 8, 1965.

Robert E. Granrud, Minneapolis, Minn.,
for appellant.

Clarence W. Moore, Washington, D. C.
(J. E. Armore, Washington, D. C., of
counsel), for Commissioner of Patents.

1. U.S.Patent No. 2,933,528 entitled "Poly-
amides of 4,4-Bis(4-Hydroxyphenyl) Pen-
tanoic Acid" issued April 19, 1960 on an
application filed September 5, 1956, said
therein to be a continuation-in-part of

Before WORLEY, Chief Judge, and
RICH, MARTIN, SMITH, and AL-
MOND, Judges.

MARTIN, Judge.

Appellant copied certain claims, in
modified form, from a patent to Greenlee [1]
for the purposes of interference. Those
modified claims appear as claims 52, 53,
59 and 60 in appellant's application,[2] and
were rejected by the examiner on the
ground that the claims are of such scope
as not to be supported by the disclosure.
The issue thus is under 35 U.S.C. § 112.
In accordance with section 708.01(f) of
the Manual of Patent Examining Pro-
cedure, appeal was taken to the board
which affirmed the examiner. The re-
maining claims in the application are in-
volved in interference, and thus are not
before us.

The four claims on appeal define com-
positions of matter which are the amide
reaction products of a bisphenolic acid
with a polyamine. Claim 52 is repre-
sentative:

> 52. As a composition of matter
> an N-acylated amine produced by in-
> teracting alkylene amines having at
> least 2 amino groups as the sole
> amide forming groups and in which
> said amino groups contain only hy-
> drocarbon substituents, and an acid
> having the formula:

serial No. 505,552 filed May 2, 1955, now
abandoned.

2. Serial No. 502,742, filed April 20, 1955
for "Bisphenolic Substituted Carboxylic
Acids and Esters."

wherein X and Y are members of the group consisting of hydrogen and lower alkyl, said N-acylated amine having only one hydrogen atom of each of at least two of said amino groups replaced by the acyl group of said acid.[3]

While claim 52 calls for the alkylene amines having "at least 2 amino groups * * *," claim 53 specifies "only 2 amino groups * * *." Claims 59 and 60 are patterned similarly, differing only in the preamble.

$$CH_3-\overset{\displaystyle \overset{OH}{\big|}}{\underset{\displaystyle \underset{OH}{\big|}}{C}}-CH_2-CH_2-\overset{\displaystyle \overset{O}{\|}}{C}-\overset{\displaystyle \underset{H}{N}}{}-CH_2-CH_2-\overset{\displaystyle \underset{H}{N}}{}-\overset{\displaystyle \overset{O}{\|}}{C}-CH_2CH_2-\overset{\displaystyle \overset{OH}{\big|}}{\underset{\displaystyle \underset{OH}{\big|}}{C}}-CH_3$$

Appellant's specification in the main shows the production of the bisphenolic acid by the reaction of phenol with levulinic acid. There is no challenge to the sufficiency of support for that acid reactant. The specification continues with a showing of the applications to which the bisphenolic acid may be put, and reads as follows:

> The following four examples illustrate reactions of the product acid of Example 1 prepared from phenol, that is, γγ-bis(4-hydroxyphenyl) valeric acid [the bisphenolic acid], and the manner in which it and polymers obtained by reacting it with other substances may be cross-linked to infusible, insoluble resins. Some of these cross-linked formaldehyde condensates may be used as cation exchange resins.

> \* \* \* \* \* \*

*Example* XIII

A highly insoluble polyamide which may be cross-linked to an in-

fusible polymer was prepared by reacting the product of Example 1 with an equivalent amount of polyethylenimine at an elevated temperature. A small amount of xylene was added to aid reaction by removal of water. After 5 to 6 hours at the reflux temperature, a light amber resinous polyamide was obtained. Subsequent reaction with formaldehyde may be carried out to cross-link this polymer.

\* \* \* \* \*

A variety of other polyfunctional compounds are also suitable for reaction with the carboxylic acid radical of the bisphenolic acids of this invention to produce cross-linkable resins including other diols such as ethylene glycol, diamines such as 1,3-diaminobutane, and amino alcohols such as N-butylethanolamine.

The issue then is whether that disclosure, within the meaning of 35 U. S.C. § 112, supports claims to products

3. A polyamide reaction product, taking ethylene diamine as a typical alkylene amine, would have the structure:

derived from alkylene amines having either "at least 2 amino groups  *  *  *," or "only 2 amino groups  *  *  *." We are in agreement with the examiner and the board that it does not. In so deciding we do not find it necessary to consider what the disclosure could support, but only whether it does support the present claims.

The examiner noted that "the sole *working example* of a[n] 'alkylene amine' is that given in example XIII." [Emphasis ours.] That example employs polyethylenimine, the structure of which is:

$$H_2N-CH_2-CH_2-(N-CH_2-CH_2)_X-N\underset{CH_2}{\overset{CH_2}{<}}$$

Evidently X varies considerably in any given sample of polyethylenimine, it being a mixture of polyamines of the above structure. No defining indicia are given in example XIII such as boiling point, etc., which would pinpoint the value of X, i. e., the particular polyethylenimine, used therein. The examiner was of the view that:

*  *  *  This compound [polyethylenimine] possesses a "cyclic group" as one of its functional groups whereas "alkylene amines" do not have this group. Since the chemical nature of polyethleneimine is different from alkyleneamines it does not serve as a representative example of the group. Ex parte Gunther, 66 U.S.P.Q. 189. Moreover, there is no support for the limitation "at least 2 amino groups."

Appellant argues that the terminal cyclic group is an amino group and cites literature [4] tending to show that the examiner errs in stating that "the chemical nature of polyethyleneimine is different from alkyleneamines  *  *  *."

4. Journal of Organic Chemistry, Vol. 9 (1944) p. 509, and Marvel, An Introduc-

It is not necessary to our decision to determine that issue, for, assuming arguendo that the $-N\underset{CH_2}{\overset{CH_2}{<}}$ group is known by one of ordinary skill in this art to be equivalent to an amino group, we do not think a single operative example enough to support claims as broad in scope as those here on appeal, claims 52 and 59, which call for "at least 2 amino groups." We think the following reasoning of the examiner to be sound:

*  *  *  The claims call for the expression having "at least 2 amino groups" but no upper limit has been set. It would be sheer speculation to try to predict what would happen to the reaction, for instance, as the length of the chain increases and as more and more amino groups were added.  *  *  *  Furthermore, since there have been no limitations on the number of amine groups there is clearly no support for these claims. As the number of amine groups increases, the nature of the molecule would be changed and prediction as to operability would amount to sheer speculation.

Appellant also relies on the reference to 1,3-diaminobutane to support claims 52 and 59 calling for "at least 2 amino groups," as well as the sole and specific support for claims 53 and 60 calling for "only 2 amino groups." The pertinent part of appellant's specification states:

A variety of other polyfunctional compounds are also suitable for reaction with the carboxylic acid radical of the bisphenolic acids of this invention to produce cross-linkable resins including other diols such as ethylene glycol, diamines such as 1,3-diaminobutane, and amino alcohols such as N-butylethanolamine.

tion to Organic Chemistry of High Polymers, W. J. Wiley (1959) p. 51.

The examiner was of the view that that language "is too broad to be meaningful" as support, and the board, on reconsideration, noted that "there is a reference to, but no description of the product of the reaction with 'diamines such as 1,3-diaminobutane'."

We think that the reference to 1,3-diaminobutane as made here does not provide sufficient support for the claims. Even were we to assume such a reference to be a disclosure of an operative example, it alone could not support the language "alkylene amines having only 2 amino groups" since 1,3-diaminobutane, having a four-carbon alkyl chain, is insufficient to support claims calling for alkyl chains of unlimited length. Thus claims 53 and 60 are not sufficiently supported.

Further, while a reaction product of the bisphenolic acid with 1,3-diaminobutane would be one of the invention compounds as claimed, there is no disclosure of such product or, necessarily, of its properties and use. Thus the suggestion of 1,3-diaminobutane as a reactant does not strengthen the disclosure of the polyethylenimine example to a degree sufficient to provide support for claims 52 and 59 calling for alkylene amines having "at least 2 amino groups."

As we view the appealed claims, they fail to meet the requirements of 35 U.S.C. § 112 in that they are broader than the invention described in the specification. In re Sus, 306 F.2d 494, 49 CCPA 1301. Since the invention claimed is broader than the invention described in the written description, we need not decide whether the polyethylenimine is an alkylene amine, or whether the reference to 1,3-diaminobutane represents such disclosure as would be sufficient on which to base any claim.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.