55 CCPA

**Application of Charles W. GARVIN.**
**Patent Appeal No. 7895.**

United States Court of Customs
and Patent Appeals.

April 4, 1968.

Alvin Guttag, Cushman, Darby & Cushman, Washington, D. C. (C. Edward Parker, Cambridge, Mass., Brooke W. Banbury, Washington, D. C., of counsel), for appellant.

Joseph Schimmel, Washington, D. C., (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and Judges SMITH, ALMOND and KIRKPATRICK.*

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the final rejection of all of the claims of appellant's application.[1]

The invention relates to the treatment of polyethylene with a corona discharge. The effect of such treatment is said to be an improvement in the ink receptivity of the polyethylene.

Claims 73 and 76 are illustrative:

73. The process of treating a polyethylene surface which comprises subjecting the said surface to the action of corona discharge.

76. Corona discharge treated polyethylene.

The claims were rejected as unpatentable in view of prior art under 35 U.S.C. § 103; as failing to define the invention under 35 U.S.C. § 112; and as being unpatentable over the count of an interference in which appellant was the losing party. Since we agree with the board that the claims fail to define the invention under 35 U.S.C. § 112, we need not consider the other two grounds of rejection.

In his specification, which, incidently, is entitled "Printing," appellant states in his first paragraph:

This invention relates to wrappings, namely, printed and decorated bags and sheetings, as well as molded products, e. g., bottles, of polyethylene resin. We have discovered that polyethylene either as flat stock, preformed tubular stock, or the actual finished articles, notably, bags, bottles and similar containers which are to be decorated and printed upon may be surface treated in a manner whereby the surface of the polyethylene has imparted to it improved ink receptive and retentive qualities. As a result, the adherence of the decoration or printing applied upon the surface-treated polyethylene base is substantially permanent. For instance, when untreated polyethylene film and treated polyeth-

1. Serial No. 326,122 filed December 15, 1952.

ylene film each having printed and decorated areas thereon, are simultaneously immersed in carbontetrachloride for ten minutes and then removed and gently stroked between the thumb and forefinger while still wet with carbontetrachloride, the printing and decoration on the untreated film slides off, while that on the treated film does not. This test is a severe one and is most significant because the carbontetrachloride swells the polyethylene film and unless a good adhesion bond is present, the printing or decoration will slide off the film.

The entire specification is directed to modifying polyethylene in such a way as to achieve adherent printing, and the use of corona discharge is only one of the methods disclosed for this purpose. The specification gives no details as to the voltage required to produce the necessary discharge, the proximity of the film to the discharge, or other operating parameters, but it does give an explicit disclosure of a "critical test" to determine whether the polyethylene has been sufficiently treated:

In the present invention, as explained above, areas treated as described herein, can no longer be fused by a heat weld. This is a critical test of whether or not the polyethylene is uniformly and successfully treated to impart uniform ink receptivity and retentivity.

This disclosure is emphasized at another point of the specification:

* * * the important test as to whether or not our treatment has been properly accomplished, is carried out by attempting to adhere face-to-face two treated areas by heat and pressure to form a customary heat weld. Failure to produce a heat weld in such cases indicates (1) that the treatment has been uniform, and (2) that the treated film may be printed upon with the assurance that permanent uniform adherence of the printing will be obtained over the entire treated area.

There is no disclosure in the specification indicating that corona discharge of any greater or lesser amount is con-

templated, or that any result other than improvement of ink receptivity is achieved by the treatment.

In the final rejection, the examiner stated:

Claims 73–77 are rejected as being broader than and unsupported by the disclosure in this application. The object and process disclosed in this application is to use corona as one of many pretreatments to cause printing ink to firmly adhere to polyethylene. There is no support in the specification for the broad concept of corona treatment set forth in these claims. The type of corona used must be specified since corona can be used for physically removing static or for chemically making the polyethylene adherent to printing. The type of corona used for removing static is different than the type of corona used for adherence to printing. Each of these treatments involve separate and distinct methods and resultant products. As now worded, these claims are so broad as to read on both of these independent methods and articles. Based on the disclosure which discloses methods of printing, the corona treatment must be limited to the type of corona suitable for subsequent printing.

In the Examiner's Answer, he again stated the rejection as being on "the ground of undue breadth since [the claims] call for applying corona to the sheet material for many [sic] and all purposes." The examiner referred to six references to support this rejection. He stated:

As a matter of fact, corona treatment of sheet material has been used for many purposes other than printing or release of static charge as clearly shown by any one of the six references grouped above. These references are not a new ground of rejection but merely serve to show how broad are the present claims which call for the single step of exposing a surface to corona. In addition, it is pointed out that these claims are not supported by the instant disclosure which deals sole-

ly with the problem of oxidizing the surface to render it adherent to printing ink by using corona. The claims should therefore be restricted to this method and not just to the broad treatment of exposure to corona without any stated purpose. Since exposing a sheet to corona may accomplish many different results and each result is dependent upon a particular way of applying said corona, it would be necessary to specify the manner in which the corona is applied.

The board, in affirming that rejection, specifically referred to that rejection as arising under 35 U.S.C. § 112 on the ground of "undue breadth," and stated:

We have considered appellant's arguments on this point but we find ourselves in agreement with the Examiner that the appealed claims are not sufficiently explicit to satisfy the requirements of the second paragraph of 35 U.S.C. 112. It is clear from the very title and the opening sentence of the present application that the improvement resides in making polyethylene receptive to printing ink. The principal method of accomplishing this end is by flame treatment, with incidental disclosure of treatment with corona discharge or oxidizing solutions. It is impossible to find a broad disclosure of corona discharge treatment of any and all degrees for any and all purposes. Corona discharge may be used for a variety of purposes, such as static discharge, electrostatic charging, graft polymerization, chemical modification, perforating, or even pyrolysis. * * *

We are not called upon to rule that the claims must set forth a purpose; all that we must decide is whether the claims as they stand satisfy the requirements of 35 U.S.C. 112. We are firm in our conclusion that the claims are inadequate to define the subject matter disclosed, namely, the treatment of polyethylene with corona discharge in such manner as to result in ink adhesion and the resulting product.

While appellant's argument here that 35 U.S.C. § 112 does not require a statement of intended use may be persuasive in other contexts, it is somewhat misdirected to an issue of whether a claim is "unduly broad" within the meaning of the second paragraph of that statute. As we view the rejection here, it is couched in the posture of whether the claims are "broader" than the disclosure. See, e. g., In re Holmen, 347 F.2d 852, 52 CCPA 1626; In re Corr, 347 F.2d 578, 52 CCPA 1505; In re Gidlow, 345 F.2d 196, 52 CCPA 1308; In re Sus, 306 F.2d 494, 49 CCPA 1301. Thus, we agree with the examiner and the board that the appealed claims are broader than the invention described in the specification and for this reason fail to meet the requirements of 35 U.S.C. § 112.

The decision of the Board of Appeals is therefore affirmed.

Affirmed.