55 CCPA

**Application of Edgar SIEGEL and Klaus Sasse.**

**Patent Appeal No. 7908.**

United States Court of Customs and Patent Appeals.

June 6, 1968.

Rehearing Denied Oct. 10, 1968.

Connolly & Hutz, John A. Sarjeant, Wilmington, Del. (Werner H. Hutz, Wilmington, Del., of counsel), for appellants.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and Judges RICH, SMITH, ALMOND, and KIRKPATRICK.[*]

SMITH, Judge.

Two issues are before this court in this appeal: (1) whether the appealed claims are so "unduly broad and indefinite" as to constitute a failure to comply with the requirements of 35 U.S.C. § 112, second paragraph; and (2) whether the appealed claims are obvious in view of the prior art of record within the meaning of 35 U.S.C. § 103.

Those issues arise in an appeal from a decision of the Board of Appeals [1] affirming the examiner's rejection of claims 48 and 51 of appellants' application.[2] Claims 22–24, 26–31 and 35–38 were allowed by the examiner.

Appellants' invention relates to fiber-reactive dyestuffs which are particularly useful for the dyeing and printing of cellulose-containing textile materials. The invention in issue particularly relates to a dyestuff having the formula shown in the following appealed claim:

51. A dyestuff which in the free acid state corresponds to the formula

$$\left[ F - \underset{\underset{R}{|}}{N} - OC - \begin{array}{c} \text{(benzene ring with N)} \end{array} \begin{array}{c} Hal \\ Hal \end{array} \right]_m$$

wherein F stands for the radical of a metal-free sulfonic acid group-containing azo dyestuff, R is a member select-ed from the group consisting of hydrogen and lower alkyl, m is an integer from 1 to 8 and Hal is a member se-

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1]. The board consisted of Messrs. Magil and Lidoff, Examiners-in-Chief, and Ster-man, Acting Examiner-in-Chief. Mr. Lidoff wrote the opinion of the board.

[2]. Serial No. 171,269, filed February 5, 1962, for "Dyestuffs."

lected from the group consisting of Cl and Br.

Appealed claim 48 is more specific and requires that "R" be hydrogen, "Hal" be chlorine, "m" be 1, and that "F" be "the dyestuff residue of a metal-free sulfonic acid group-containing monoazo dyestuff."

Appellants explain that such fiber-reactive dyestuffs are distinguished by the presence of a characteristic fiber-reactive moiety or radical, as illustrated by the grouping nearest the right hand bracket of claim 51. Appellants submit that the function of this moiety is to react with the cellulose-containing textile materials, thus firmly bonding the dyestuffs thereto. The resulting dyed fibers are said to have outstanding resistance to wet processing and possess excellent general fastness properties. Appellants emphasize that the concept of fiber-reactive dyestuffs was not new at the time of their invention. Other such dyestuffs were known which contained different moieties or radicals for performing the so-called "hook" function.

We shall first consider the rejection of both appealed claims under 35 U.S.C. § 112, second paragraph, as "being unduly broad and indefinite." The original statement of that rejection appears to have been made in an "Advisory Action of October 7, 1964," a paper which is not part of the record before this court. It may be noted that the examiner's final rejection is dated January 7, 1964 and that several subsequent amendments were entered by the examiner, requiring several restatements of position on his part.

In their brief on appeal to the board, the appellants acknowledged the examiner's position with the following statement:

* * * Belatedly in the Advisory Action of October 7, 1964, the Exam-

iner also states that "support is seen only wherein the bridging group —NCO—is directly linked to a
|
R
nuclear carbon atom of F." It is not clear whether this is intended to form a new ground of rejection or not; it does not come within the scope of the rejections which were outstanding at the time the Advisory Action was written. To hasten prosecution; it will be answered herein.

In that brief, appellants controverted the foregoing rejection, relying on working example 273 of the specification for its showing of a specific dyestuff in which the —NCO—group is linked to a
|
R
nuclear carbon atom of "F" *through* the bridging group—NHOCCH₂—. They also pointed to the specification for its disclosure that dyestuffs are easily obtained by reacting amino group-containing azo dyestuffs having nuclear-positioned *and/or externally linked* amino groups with compounds such as 2,3-dichloroquinoxaline-6-carboxylic acid chloride. This, appellants thought, overcame the examiner's holding that only direct linking was shown.

The examiner was unpersuaded. In elaborating upon the ground of rejection, the examiner stated that the breadth of the definition of "F" in the appealed claims outlined the importance of how the fiber reactive radical is linked to the azo dye.[3] He considered that portion of the specification relied upon by the appellants as being "prophetic in character," and characterized the matter as one of "indefiniteness." He stated, "[a]s the claims now read it is impossible to tell how the bridging group —N—OC— is
|
R
linked to F."

<hr/>

3. It is helpful in understanding the rejection to recall at this point that "F" in appealed claim 51 "stands for the radical of a metal-free sulfonic acid group-containing azo dyestuff," whereas the corresponding portion of the dyestuff in claim 48, denominated $F_1$, is "the dyestuff residue of a metal-free sulfonic acid group-containing monoazo dyestuff."

814

The board affirmed that ground of rejection, stating:

The Examiner has also rejected claims 48 and 51 as failing to comply with the requirements of 35 U.S.C. 112 in that it is not indicated therein how the bridging group—NCO—is

$$\overset{|}{R}$$

linked to the azo dye molecule. We have considered all of appellants' arguments but must agree with the Examiner's position *since it is not clear what is intended by the terms "the dyestuff residue" or "the radical of * * * azo dyestuff"* [see note 3, supra] and it cannot be determined where the substituted carboxamido group is attached. We find no support in the specification for exocyclic substitution. Where the linkage is not directly on the nucleus, it is taught to be attached through a bridging member and not to a non-nuclear substituent in the azo dyestuff moiety. [Emphasis added.]

Appellants' position here on that issue is that the particular mode of attachment of the bridging group of appellants' fiber-reactive moiety to their azo dye molecule is immaterial to their invention and need not be specified in their claims. They urge that their disclosure, as a whole, teaches that the particular mode of attachment of the bridging group in issue to the azo dye molecule is immaterial to their invention.

In the specification, it is explained that:

Among the great number of dyestuffs obtainable according to this process those products are especially easily obtained which are derived from amino group-containing azo dyestuffs of the benzene-azo-benzene, benzene-azo-naphthalene, naphthalene-azo-naphthalene, benzene-azo-aminopyrazole and -pyrazolone series and of the hetero-azo-aryl series and the aminoanthraquinone series with nuclear-positioned and/or externally linked amino groups, by the reaction with compounds of the formula (II)

which contain in the 5- or 6-membered nucleus A [disclosed as meaning a five- or six-membered isocyclic or heterocyclic ring] a reactive grouping, for example a carboxylic acid chloride, sulfonic acid chloride, isocyanate, urethane, halotriazinylamino, halopyrimidinylamino or also a dichloroquinoxalinoyl or dichloroquinoxalinoyl-methylene group. * * * [Brackets added.]

Appellants argue that when nucleus A is a 6-membered carbocyclic group and contains a reactive carboxylic acid chloride group, it includes reactants of the formula (formula VI of appellants' brief):

When this compound is condensed with an amino group-containing metal-free sulfonic acid group-containing azo dyestuff wherein the amino group is nuclear-positioned or externally linked to the azo dyestuff, the resulting dyestuff is said by appellants to fall within the scope of the appealed claims. Thus, it is, in appellants' view, the amino group which supplies "—N—" in the claimed

$$\overset{R}{\text{bridging group (—NCO—).}}$$

In summary, it is appellants' position that, contrary to the examiner's assertion, any one skilled in the art of dyestuff chemistry would appreciate that claims 48 and 51 embrace linkage of the bridging group (—NCO—) to the azo

$$\overset{|}{R}$$

dye molecule through either a nuclear

carbon atom of the azo dyestuff reactant or an externally linked group thereof.

Using claim 51 as an example, when "m" is 1 and R is hydrogen, in the case of direct bridging to a nuclear carbon atom, appellants argue that the azo dyestuff reactant could be represented by $F_3$—$NH_2$ wherein the amino group is linked to a nuclear carbon atom of the azo dyestuff reactant. In the case of an externally-linked amino group, the azo dyestuff reactant could be represented by $F_4$—X—$NH_2$ wherein X is a conventional dyestuff bridging group between amino and a nuclear carbon atom of an azo dyestuff, $F_4$—X— also being designated by F— in claim 51. In short, to one skilled in the art, claim 51 (when "m" is 1) represents, in appellants' view, the condensation product which may be obtained from F—NH, the amino group

$$\underset{R}{\overset{F-NH}{|}}$$

thereof being bonded to the azo dyestuff directly via a nuclear carbon atom or indirectly by a conventional linking moiety, with a compound of formula VI above.

When "m" is greater than one, the amino azo dyestuff reactant contains more than one —NH group, either di-

$$\underset{R}{\overset{-NH}{|}}$$

rectly or indirectly attached to a nuclear carbon atom of the azo dyestuff. Appellants assert that those two bridging possibilities are all that claims 48 and 51 cover and indeed represent all that these claims could cover from the standpoint of a skilled dyestuff chemist.

Moreover, appellants continue that there is clear support for the foregoing, not only from the general disclosure of appellants' application, but also from the working examples in the specification. In particular, example 273 illustrates linking of the bridging group (—NCO—) to an externally-linked

$$\underset{R}{\overset{-NCO-}{|}}$$

amino group via —NH—OC—$CH_2$—.

To those skilled in the art, appellants argue, preparation of the dyestuff of example 273 could also be via condensation of the 2,3-dichloro substituted reactant of formula VI above and the disulfonic acid reactant of example 273 having a —NH—OC—$\underset{\overset{|}{CH_3}}{CH_2}$—NH substituent in lieu of a 1-amino substituent, followed by the described coupling reaction since the claims embrace the resultant product irrespective of its method of preparation.

The solicitor points out in response to appellants' arguments that all but one of the 274 working examples submitted by the appellants are characterized by a bridging group which is "directly connected to a nuclear carbon atom of the azo dye moiety." He recognizes, however, that from the one exception found in example 273, which is emphasized by appellants, it is apparent that the group NH—OC—$CH_2$ intervenes between the $CH_3$ group and the nearest nuclear car-

N—OC

bon atom. Thus, the solicitor characterizes the rejection as based upon the appellants' failure to particularly point out and distinctly claim his invention within the statutory requirements of 35 U.S.C. § 112, paragraph 2, first sentence.[3]

Assuming, as the solicitor does, that claims 48 and 51 embrace at least two types of linkages i. e., direct, and "externally-linked," it should be noted that the Patent Office has raised no issue as to support for direct linkage to a nuclear-positioned carbon. Thus, it can be said that the examiner and board were not satisfied that the single example 273 was adequately representative of the "large indefinite number of compounds covered by the claims at bar, which would include such an external linkage."

3. The specification shall contain a written description of the invention * * *. The specification shall conclude with one or more claims particularly pointing out

and distinctly claiming the subject matter which the applicant regards as his invention. * * *

In In re Cavallito, 48 CCPA 720, 726, 282 F.2d 363, 367 (1960), this court stated:

> * * * The sufficiency of a disclosure depends not on the number but rather on the nature of the claimed compounds *per se* and the nature of the supporting disclosures. If a claim covers compounds which are closely related, a comparatively limited disclosure may be sufficient to support it. If, however, the claim covers compounds which are related only in some structural respects, a more extensive supporting disclosure may be necessary to support it. Moreover, the selection of the examples and other exemplary material used as the disclosure to support a claim must be adequately representative of the area covered by it. * * * [Emphasis added.]

The question then becomes one of whether the disclosure submitted by appellants, i. e., the written description of the invention, is adequately representative of the breadth of the claims here appealed.

Thus, under these circumstances, we view the "indefiniteness" aspects of the Patent Office position to be inextricably interwoven with the breadth rejection to the extent that separate discussion is unnecessary.

We agree with the solicitor that appellants' arguments are not persuasive that the board erred in sustaining this aspect of the examiner's rejection. While the appellants would confine the bridging possibilities to those in which the —NH group is "directly attached,"

R

or "indirectly attached" to the nuclear carbon atom of the azo dyestuff, the board specifically found no support in the specification for exocyclic substitution, as quoted above.

The board added that example 273 is not adequately representative of all possible non-nuclear linkages, but is better interpreted as representing an azo dyestuff linked through a nuclear carbon atom to the quinoxaline by the particular bridging member there disclosed, i. e.,

$$-OC-CH_2-\overset{\overset{\textstyle CH_3}{|}}{N}-OC-.$$

The board also observed that the terminology of the appealed claims was of such breadth that it included linkage of an azo dyestuff to the nitrogen of the quinoxaline carboxamide through an azo linkage or other linkage which is not suggested nor would be expected to produce a stable dyestuff product.

We thus believe, as did the examiner and the board, that the appealed claims embrace subject matter not described by a "written description" which, in contemplation of law, may be said to be adequately representative of the breadth desired. See also In re Lund, 54 CCPA 1361, 376 F.2d 982, 985 (1967); In re Holmen, 52 CCPA 1626, 347 F.2d 852 (1965).

In affirming the decision of the board, we wish to make it clear that nothing is here intended as a determination that a *single* example may not be relied upon in evaluating an invention, or that but a single example may not be a sufficient written description to support a particular broad claim. What we decide here is that the invention claimed in the appealed claims appears to be broader than the invention disclosed in the written description forming a part of the specification. In re Sus, 49 CCPA 1301, 306 F.2d 494 (1962); see In re Corr, 52 CCPA 1505, 347 F.2d 578(1965).

In view of our disposition of this appeal on the ground noted we need not reach the merits of the issue arising under 35 U.S.C. § 103. Nor need we decide whether claim 51 is broader than the written description of the invention in defining "m" as an integer from 1 through 8. While that rejection also arises under 35 U.S.C. § 112, second paragraph, it is not necessary to here decide that aspect of the rejection.

In view of the foregoing, the decision of the board is affirmed to the extent indicated.

Affirmed.