Joseph ZEKAS and Local 594, Milwaukee County Department of Public Welfare and Related Social Services Employees, affiliated with Milwaukee District Council 48, American Federation of State, County and Municipal Employees, AFL-CIO, Plaintiffs,

v.

Joseph BALDWIN, individually and as Director of the Department of Public Welfare of the County of Milwaukee, Anthony P. Romano, individually and as Chief Examiner of the Milwaukee County Civil Service Commission, Frank A. Peluso, individually and as a member of the Milwaukee County Civil Service Commission; Edmund J. Krawczyk, individually and as a member of the Milwaukee County Civil Service Commission, Fred Lindner, individually and as a member of the Milwaukee County Civil Service Commission, Fred Knox, individually and as a member of the Milwaukee County Civil Service Commission, and Mary A. Cannon, individually and as a member of the Milwaukee County Civil Service Commission, Defendants.

Civ. A. No. 70-C-115.

United States District Court,
E. D. Wisconsin.

March 20, 1970.

John S. Williamson, Jr., Milwaukee, Wis., for plaintiffs.

Robert P. Russell, Corporation Counsel, and Robert G. Polasek, Asst. Corporation Counsel, Milwaukee, Wis., for defendants.

## OPINION AND TEMPORARY RESTRAINING ORDER

REYNOLDS, District Judge.

Plaintiff, Joseph Zekas, is employed by the Milwaukee County Department of Public Welfare as a caseworker. He seeks an order temporarily restraining the defendants from taking further action in the disciplinary proceedings commenced against him on February 13, 1970. Zekas also seeks an order terminating his suspension from employment which coincides with the institution of the disciplinary proceedings.

The complaint alleges that the defendants, acting under color of state law, have deprived plaintiffs of certain constitutionally secured rights; namely, the freedom of expression guaranteed by the First and Fourteenth Amendments and the right to due process guaranteed by the Fourteenth Amendment.

Jurisdiction exists under 28 U.S.C.A. § 1343(3) and (4) and 42 U.S.C.A. § 1983.

The record presently discloses that Joseph Zekas was employed as a caseworker by the Milwaukee County Department of Public Welfare on April 29, 1968, and continued to be employed in that capacity until he was suspended on February 13, 1970.

The suspension occurred under the rules of the Milwaukee Civil Service Commission when written charges were made, as cause for his discharge, by the Director of the Department of Public Welfare.

The charges allege violations of paragraphs (e), (f), and (k) of Section 4, Rule VII, of the Milwaukee County Civil Service Commission:

"(e) is wantonly offensive in his conduct or language toward the public or toward county officers or employes; or

"(f) has been guilty of insubordination or disgraceful conduct, whether while on or off duty; or

\*  \*  \*  \*  \*  \*

"(k) is guilty of acts or omissions unbecoming an incumbent of the particular office or position held, which render his suspension, demotion, or discharge necessary or desirable for the economical or efficient conduct of the business of the county or for the best interest of the county government; or \* \* \*".

The conduct asserted to constitute the violations of these provisions is set forth in the charges:

"a.  On or about January 14, 1970, while on duty he photographed seven fellow employes in their work setting without the consent and over the objection of such employes, thereby intimidating and harassing them and interfering with the performance of their duties and, at the same time, neglecting his own.

"b.  On or about January 21, 1970, he published and distributed, or caused to be published and distributed, certain printed statements relating to clothing allowances, which statements were inaccurate, untrue and a distortion of the facts; that such printed statements were intended to, and did, create resentment toward and contempt for the Milwaukee County Department of Public Welfare by welfare recipients.

"c.  On or about January 22, 1970, he participated with welfare recipients and others in a demonstration at the Milwaukee County Courthouse for the purpose of pressing the demands of the demonstrators for increased clothing allowances; that such demonstration resulted in damage to, or destruction of, County property in excess of $200.00 in value; that such demonstration resulted in the interruption of the orderly processes of government and was designed to coerce and intimidate the legislators of Milwaukee County in the exercising of their responsibilities; that it was necessary to employ the services of the Milwaukee County Sheriff's Department to restore order and minimize damage in the corridors and meeting rooms of the Courthouse; that he marked himself present for duty for the period of time he was engaged in such demonstration and accepted payment therefor.

"d.  On or about January 26, 1970, he made public statements at a meeting of the Southeastern Wisconsin Chapter of the National Asso-

ciation of Social Workers, of which he is not a member, criticizing the Director and Deputy Director of the Department of Public Welfare for the manner in which they exercised their administrative responsibilities and deriding their efforts and programs to meet the needs of the welfare recipients and, further, applauding the actions of welfare demonstrators who had earlier in the day invaded a department store, disrupted business and damaged or destroyed stock and fixtures; that such statements were untrue, contemptuous and wantonly offensive.

"e. During the month of January, 1970, while assigned to the Division of Family and Children's Services, he advised one of the children assigned to him, a boy 15 years of age, that 'if you are going to smoke pot, don't get caught' and, further, that he advised the child that he was in welfare work in order to avoid the draft and would, after reaching an exempt age, go to law school and 'defend hippies,' thus destroying his ability to create a positive image for the child which is essential to an effective relationship between caseworker and client."

Zekas seeks to restrain the continuation of the suspension and the holding of a hearing on the charges pending the outcome of this action on the grounds (1) that paragraphs (e), (f), and (k) are unconstitutional on their face because of vagueness and overbreadth, and (2) that the disciplinary proceedings attempted to punish conduct protected by the First and Fourteenth Amendments.*

█ With respect to plaintiffs' contention that the First and Fourteenth Amendment rights have been violated, I am of the opinion that the likelihood of plaintiffs' ultimately prevailing is not so clear as to warrant issuance of a temporary restraining order. It has been decided that public employment generally may not be terminated because of the exercise of First Amendment rights. Keyishian v. Board of Regents, 385 U.S.

---

* The rules of the Commission provide that whenever a person authorized by those rules files a complaint seeking the discharge of an employee, that employee may be suspended *without pay* at the time of the filing of the complaint. This was done in the instant case.

The rules further provide:

"Section 3—FILING; NOTICE; HEARING. (1) In cases involving the filing of charges for discharge of demotion, the commission shall appoint a time and place for the hearing of said charges, the time to be within three weeks after the filing of the same, unless further time be granted by the commission for cause shown, either upon the application of the complainant, the employe or his attorney before the expiration of said three weeks. Notice shall be given the complainant and the employe or his attorney of the time and place of said hearing. In cases where an employe is suspended a second time within six months for any period whatever, the employe so suspended shall have the right of a hearing by the commission on the second suspension or any subsequent suspensions within the said period, the same as herein above provided for in demotion or dismissal proceedings."

The complaint here was filed February 13, 1970. The hearing before the Civil Service Commission was set for March 2, 1970. At the time of the hearing on the motion for the temporary restraining order (March 9, 1970), there was no indication that the hearing had been held or that it had been continued as provided for by the rules.

The plaintiffs have not raised any issue of a denial of procedural due process under the Fourteenth Amendment based on the disciplinary scheme set forth in the rules. That scheme does not provide for nor does the record indicate that Mr. Zekas was afforded a hearing in which to respond to the charges promptly after the charges were filed. That such a "preliminary hearing" is required by due process is suggested by Stricklin v. Regents, 297 F.Supp. 416 (W.D.Wis. 1969), and Lafferty v. Carter, 310 F.Supp. 465 (W.D.Wis.1970). However, since that issue has not been raised in the present proceedings, I indicate no opinion on it.

589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); McLaughlin v. Tilendis, 7 Cir., 392 F.2d 287 (1968). But still to be resolved is the question of the extent of limitation that may be imposed on a public employee's exercise of his First Amendment rights with respect to the policy and administration of the public agency by which he is employed.

> " * * * the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in conection with regulation of the speech of the citizenry in general. * * * " Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968).

The resolution of the First Amendment issue would entail ascertaining (1) the nature and extent of the conduct on which the charges against Zekas were based and (2) if Zekas did engage in the conduct charged, whether he was protected by the First Amendment against suspension for that conduct. The present posture of this case does not indicate how these questions would be answered.

■ It is more likely than not that the plaintiff's contention that paragraphs (e), (f), and (k) are unconstitutionally vague will be sustained by the ultimate decision in this case.

A rule " * * * which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). " * * * [S]tandards of permissible statutory vagueness are strict in the area of free expression. * * * Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." N. A. A. C. P. v. Button, 371 U.S. 415, 432–433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405 (1963).

The rules of the Civil Service Commission which are alleged to have been violated by Mr. Zekas do not measure up to the strict standards of permissible statutory vagueness required in the area of First Amendment freedoms.

Paragraph (e) proscribes "wantonly offensive" conduct or language toward the public or county officials. Paragraph (f) is directed at insubordination and disgraceful conduct. Paragraph (k) is concerned with acts or omissions unbecoming an incumbent which render his suspension, demotion, or discharge necessary or desirable for the economical or efficient conduct of the county's business or for the best interest of the county.

Nowhere in these rules, or elsewhere, is there any meaningful guideline as to what conduct may be engaged in without running afoul of any or all of the provisions quoted above. The provisions are not cast in "terms susceptible of objective measurement." Cramp v. Board of Public Instruction, 368 U.S. 278, 286, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). Men of common intelligence must necessarily guess at their meaning and differ as to their application.

Paragraphs (e), (f), and (k) lack "[p]recision of regulation [that] must be the touchstone in an area so closely touching our most precious freedoms." N. A. A. C. P. v. Button, supra, at 438, 83 S.Ct. at 340.

I am of the opinion that irreparable harm will occur if the disciplinary action is allowed to proceed and if the suspension is continued. The injury to Zekas's future in his profession as a social worker that would result from the disciplinary proceedings is one that is not calculable in financial terms.

Defendants have opposed the temporary restraining order by contending that the conduct charged in (a) and (e) is different than and severable from that charged in (b), (c), and (d). The record presently before the court discloses that the incidents alleged in (a) and (e) had been resolved prior to the commence-

ment of the disciplinary proceedings and were revived because of the conduct alleged in (b), (c), and (d). All the charges appear to be interrelated and connected.

For the foregoing reasons,

It is ordered that the defendants, and each of them, be and they are hereby temporarily restrained from continuing the suspension of plaintiff, Joseph Zekas, on the basis of charges filed against him by the defendant, Joseph Baldwin, and from holding a hearing on said charges pending the outcome of this action.