Joseph ZEKAS et al., Plaintiffs,

v.

Joseph BALDWIN et al., Defendants.

Civ. A. No. 70–C–115.

United States District Court,
E. D. Wisconsin.

Dec. 27, 1971.

John S. Williamson, Jr., Milwaukee, Wis., for plaintiffs.

Robert G. Polasek, Asst. Corp. Counsel, Milwaukee, Wis., for defendants.

REYNOLDS, Chief Judge.

This is a § 1983 action challenging the suspension of a government employee and the regulations under which he was suspended. Jurisdiction is grounded upon 28 U.S.C. § 1343.

The individual plaintiff in this action, Joseph Zekas, was employed as a case worker by the Milwaukee County Department of Public Welfare on April 29, 1968. On February 13, 1970, administrative proceedings were commenced to permanently discharge Mr. Zekas from employment. Simultaneously he was suspended without pay. The cause for this suspension and attempt to discharge the plaintiff was his alleged violations of paragraphs (e), (f), and (k) of Section 4, Rule VII, of the Milwaukee County Civil Service Commission:

"(e) is wantonly offensive in his conduct or language toward the public or toward county officers or employes; or

"(f) has been guilty of insubordination or disgraceful conduct, whether while on or off duty; or

\* \* \* \* \* \*

"(k) is guilty of acts or omissions unbecoming an incumbent of the particular office or position held, which render his supension, demotion, or discharge necessary or desirable for the economical or efficient conduct of the business of the county or for the best interest of the county government; or

\* \* \*."

The conduct asserted to constitute the violations of these provisions is as follows:

"a. On or about January 14, 1970, while on duty he photographed seven fellow employes in their work setting without the consent and over the objection of such employes, thereby intimidating and harassing them and interfering with the performance of their duties and, at the same time, neglecting his own.

"b. On or about January 21, 1970, he published and distributed, or caused to be published and distributed, certain printed statements relating to clothing allowances, which statements were inaccurate, untrue and a distortion of the facts; that such printed statements were intended to, and did, create resentment toward and contempt for the Milwaukee County Depart-

ment of Public Welfare by welfare recipients.

"c. On or about January 22, 1970, he participated with welfare recipients and others in a demonstration at the Milwaukee County Courthouse for the purpose of pressing the demands of the demonstrators for increased clothing allowances; that such demonstration resulted in damage to, or destruction of, County property in excess of $200.00 in value; that such demonstration resulted in the interruption of the orderly processes of government and was designed to coerce and intimidate the legislators of Milwaukee County in the exercising of their responsibilities; that it was necessary to employ the services of the Milwaukee County Sheriff's Department to restore order and minimize damage in the corridors and meeting rooms of the Courthouse; that he marked himself present for duty for the period of time he was engaged in such demonstration and accepted payment therefor.

"d. On or about January 26, 1970, he made public statements at a meeting of the Southeastern Wisconsin Chapter of the National Association of Social Workers, of which he is not a member, criticizing the Director and Deputy Director of the Department of Public Welfare for the manner in which they exercised their administrative responsibilities and deriding their efforts and programs to meet the needs of the welfare recipients and, further, applauding the actions of welfare demonstrators who had earlier in the day invaded a department store, disrupted business and damaged or destroyed stock and fixtures; that such statements were un-

true, contemptuous and wantonly offensive.

"e. During the month of January, 1970, while assigned to the Division of Family and Children's Services, he advised one of the children assigned to him, a boy 15 years of age, that 'if you are going to smoke pot, don't get caught' and, further that he advised the child that he was in welfare work in order to avoid the draft and would, after reaching an exempt age, go to law school and 'defend hippies,' thus destroying his ability to create a positive image for the child which is essential to an effective relationship between caseworker and client."

Zekas subsequently filed this action to enjoin the suspension and administrative proceedings for discharge on the grounds (1) that paragraphs (e), (f), and (k) are unconstitutional on their face because of vagueness and overbreadth, and (2) that in any case the conduct alleged to constitute violation of those paragraphs is protected by the First and Fourteenth Amendments. On March 20, 1970, after the submission of written and oral arguments by both sides, I entered a temporary restraining order. Zekas v. Baldwin, 310 F.Supp. 575 (E.D.Wis.1970). Presently there is before me a motion for summary judgment brought by the plaintiffs. I find that it should be granted.

■ Plaintiffs' first avenue of attack is that the Civil Service regulations Zekas is charged with violating are vague and overbroad. The "vague and overbroad" test generally comes into play in two types of situations: (1) because the Fifth or Fourteenth Amendment due process requires a prior warning of culpable conduct in certain situations before a penalty may be imposed, and (2) because the First Amendment demands that protected conduct shall not be deterred by vague or overbroad attempts

to prohibit unprotected conduct. I deal with the test only in the second setting.[1]

■ It is clear, in the Seventh Circuit at least, that (1) employment regulations may be attacked by employees as vague or overbroad deterrents of their First Amendment rights, and (2) that an attempt to discipline an employee under a vague or overbroad regulation must necessarily fail without regard to whether the specific conduct prompting the discipline is in fact protected by the First Amendment. Muller v. Conlisk, 429 F.2d 901 (7th Cir. 1970); Soglin v. Kauffman, 418 F.2d 163 (7th Cir. 1969).[2] While perhaps employment regulations may not be required "to satisfy the same rigorous standards as criminal statutes," I think that the amorphous regulations which the individual plaintiff was charged with violating are both vague and overbroad under even a substantially less rigorous standard.[3]

I found in my earlier opinion in this matter that:

"Paragraph (e) proscribes 'wantonly offensive' conduct or language toward the public or county officials. Paragraph (f) is directed at insubordination and disgraceful conduct. Paragraph (k) is concerned with acts or omissions unbecoming an incumbent which render his suspension, demotion, or discharge necessary or desirable for the economical or efficient conduct of the county's business or for the best interest of the county.

"Nowhere in these rules, or elsewhere, is there any meaningful guideline as to what conduct may be engaged in without running afoul of any or all of the provisions quoted above. The provisions are not cast in 'terms susceptible of objective measurement.' Cramp v. Board of Public Instruction, 368 U.S. 278, 286, 82 S.Ct. 275, 7 L.

---

1. With regard to the first setting—the "prior warning" aspect—note the recent case of Shirck v. Thomas, 447 F.2d 1025, 1027 (7th Cir. 1971):

"* * * plaintiff argues that the defendants could not rely on the reason stated [for her dismissal] with respect to failure to coordinate her teaching with that of her colleague unless the defendants could also show that they had defined in advance the standard of conduct to be followed and informed plaintiff of it. We think, however, that a teacher may be assumed to be competent in matters of classroom performance, and the school must have considerable freedom to refuse to retain a probationary teacher who does not meet imprecise, though nonetheless valid, standards of competence."

One might add legitimate attempts to either upgrade the quality of the staff or reduce its size (as Holmes said there is no constitutional right to government employment) as additional reasons for not requiring precise prior warnings in matters of job competence and performance. Whether this same laxity is permissible with regard to legitimate but vague attempts to govern matters not directly related to the job function, however, may be another matter. See generally these other cases dealing with the prior warning problem: Lucia v. Duggan, 303 F.Supp. 112 (D.Mass.1969);

Rumler v. Board of School Trustees, 327 F.Supp. 729 (D.S.C.1971); Melton v. Young, 328 F.Supp. 88 (E.D.Tenn.1971); and Hasson v. Boothby, 318 F.Supp. 1183 (D.Mass.1970).

2. These recent decisions are either in full or partial support of the Seventh Circuit rule: Flynn v. Giarrusso, 321 F.Supp. 1295 (E.D.La.1971); Gray v. City of Toledo, 323 F.Supp. 1281 (N.D.Ohio 1971); Friedman v. Union Free School District, 314 F.Supp. 223 (E.D.N.Y. 1970); Sill v. Pennsylvania State University, 318 F.Supp. 608 (M.D.Pa.1970); Sword v. Fox, 317 F.Supp. 1055 (W.D. Va.1970); Smith v. University of Tennessee, 300 F.Supp. 777 (E.D.Tenn. 1969); Stacy v. Williams, 306 F.Supp. 963 (N.D.Miss.1969); Downs v. Conway School District, 328 F.Supp. 338 (E.D. Ark.1971); Riseman v. School Committee, 439 F.2d 148 (1st Cir. 1971).

3. Soglin v. Kauffman, supra, 418 F.2d at 168. It may be that the standard of measurement may also vary depending on the type of employment regulation. Thus, e. g., a regulation governing actual job performance might be subject to a less stringent test than a regulation governing off-the-job activity, or a regulation governing conduct insubstantially connected with the fulfillment of employment responsibilities.

Ed.2d 285 (1961). Men of common intelligence must necessarily guess at their meaning and differ as to their application." Zekas v. Baldwin, supra, 310 F.Supp. at 578.

■ None of the challenged regulations are by their terms limited to "on the job" situations or are directed toward job performance. Rather, each is directed at controlling an employee's conduct both on and off duty.[4] While there is no doubt that *some* conduct which would be a legitimate basis for discharge or discipline might be termed "wantonly offensive," "insubordinate," "disgraceful," or "unbecoming," it is equally as obvious that *some* conduct which is protected from employer interference by the First Amendment might also be so termed. For example, in Pickering v. Board of Education, 391 U. S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 881 (1968), a school teacher wrote a letter to a newspaper charging her school board with bad faith and bad judgment and included some erroneous information. It was held that her conduct was protected by the First Amendment. An average employee, however, might well fear that if he were to engage in such conduct that his employer would term it "wantonly offensive," "insubordinate," "disgraceful," or "unbecoming."[5] Our democracy rests in no small part on open discussion of policy and facts by all citizens. A government employment regula-tion which by its vagueness and overbreadth deters employees from participating in such public debates must fall as a substantial threat to the liberty that each of us shares and is obligated to preserve. "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." N.A.A.C.P. v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963). Accordingly, paragraphs (e), (f), and (k) cannot stand.

In that paragraphs (e), (f), and (k) are void, it is unnecessary to consider plaintiffs' second argument.

It is therefore ordered that the suspension of and the proceedings to discharge the plaintiff Joseph Zekas are null and void.

It is further ordered that pargraphs (e), (f), and (k) of Section 4, Rule VII, of the Civil Service Rules promulgated by the Milwaukee County Civil Service Commission be and they hereby are declared in violation of the Constitution of the United States.

It is further ordered that the plaintiff Joseph Zekas be and he hereby is awarded any and all back pay, including any and all fringe benefits owing to him as a Case Worker I in the Department of Public Welfare, County of Milwaukee, and the costs and disbursements of this action.

4. Paragraph (f) is explicit in its broad reach, while paragraphs (e) and (k) are by omission of any limiting words vague and accordingly broad. The import of the omission in (e) and (k) is heightened by the fact that some companion rules are expressly limited to on-duty occurrences; e. g., paragraph (c) states: "has been intoxicated while on duty * * *."

5. In the instant case there can be no doubt that these regulations are meant to deter undesirable conduct (undesirable, that is, in the eyes of Milwaukee County) for paragraph (2) of Section 4, Rule VII, reads as follows: "A copy of this section, with any amendments thereto, shall be submitted to the head of every department, by him to be posted in such manner as to bring it to the attention of all employes of such department."