**UNITED STATES of America**
**Plaintiff-Appellee,**

v.

**Lester RAMSEY, Defendant-Appellant.**

**No. 73–1580.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1974.

Decided Aug 6, 1974.

Rehearing Denied Oct. 2, 1974.

Sam Adam, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Michael D. Groark, Gary L. Starkman, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and PELL and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

This appeal presents the question whether the entire Title III of the Omnibus Crime Control and Safe Streets Act of 1968, which establishes a statutory procedure for obtaining authority to engage in electronic eavesdropping,[1] is unconstitutional "on its face." Appellant also argues that the wiretap conducted in this case violated the portion of the authorizing order which directed the agents to minimize the interception of nonincriminating statements; and that the trial court erred by failing to grant immunity to a defense witness who exercised his privilege against self-incrimination.

There is no dispute about the fact that critical evidence was obtained by means of a court-authorized wiretap,[2]

[1]. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 entitled "Wiretapping and Electronic Surveillance" is found at 82 Stat. 211. In § 801 of that Act, Congress set forth its findings supporting the legislation; § 802 enacts a new Chapter 119 of the Criminal Code entitled "Wire Interception and Interception of Oral Communications." See 18 U.S.C. §§ 2510-2520. Section 803 amended § 605 of the Communications Act of 1934, 47 U.S.C. § 605, to remove the complete prohibition against interception of telephonic communications without the consent of either party. Section 804 established a National Commission for the review of federal and state laws relating to wiretapping and electronic surveillance.

[2]. On May 4, 1970, telephone intercepts and pen registers were installed on two telephones in Chicago for which John Haygood, a co-indictee, was the subscriber. Three conversations between Haygood and appellant, who lived in Detroit, were overheard and introduced at trial; the jury may have inferred that they involved negotiations for the sale of heroin. The government also introduced evidence, apparently obtained at least in part in consequence of the wiretap, of surveillance of a journey made by Ann

or about the sufficiency of the evidence supporting the jury verdict finding appellant guilty of conspiring to buy and sell heroin.[3] We treat appellant's arguments in order.[4]

## I.

In his facial challenge to the constitutionality of Title III, appellant argues, first, that authorization to listen continuously to all conversations over a given telephone for 30 days is in the nature of a general search warrant forbidden by the Fourth Amendment and, second, that since the statute fails to require that no-

tice be given to every person whose conversations have been overheard, it confers impermissible authority to conduct secret searches.[5] These arguments have been considered and rejected by other circuits.[6]

■■■■■ Appellant does not argue that the instant wiretap violated his own constitutional rights.[7] At the outset, therefore, we must consider whether appellant has standing to challenge the statute on the ground that its application to other persons in situations different from that before us might be unconstitutional.[8] Under traditional

---

Haygood (John Haygood's wife) from Chicago to Ramsey's Detroit residence, and back to Chicago, which the jury might reasonably have concluded was made for the purpose of securing a quantity of heroin, which Haygood later resold.

3. The charge was brought under 21 U.S.C. § 174, repealed Act of Oct. 27, 1970, Pub.L. No.91–513, Title III, § 1101(a)(2), 84 Stat. 1291.

4. Appellant also advanced a contention which is now foreclosed by the Supreme Court decision in United States v. Chavez, 416 U.S. 562, 570–575, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). Appellant suggested that the authorization for the instant eavesdropping might have been obtained illegally because of the alleged forgery of the signature of Assistant Attorney General Will Wilson on the application for the intercept order and requested a remand for an evidentiary hearing on the issue. Since the record contains an affidavit of former Attorney General John Mitchell stating that he personally initialed a memorandum approving the instant wiretap, the statuory requirements were satisfied. Cf. United States v. Roberts, 477 F.2d 57, 59 (7th Cir. 1973).

5. Appellant also suggests that the very existence of wiretapping authority has a chilling effect on free speech and, therefore, the statute violates the First Amendment. See Lopez v. United States, 373 U.S. 427, 450, 83 S.Ct. 1381, 10 L.Ed.2d 462 (Brennan, J., dissenting). If this argument were valid, no statutory authorization of electronic eavesdropping would be constitutional. Plainly that result would be inconsistent with the Supreme Court's analysis in Katz v. United States, 389 U.S. 347, see especially pages 354–356, 88 S.Ct. 507, 19 L.Ed.2d 576.

6. See United States v. Cafero, 473 F.2d 489, 495–497, 498–500 (3rd Cir. 1973); United

States v. Tortorello, 480 F.2d 764, 773–774 (2d Cir. 1973). Although the primary claims in the two *Cox* cases were somewhat different, it is fair to say that the Eighth and Tenth Circuits have also implicitly rejected these arguments. See United States v. Cox, 449 F.2d 679, 685, 687 (10th Cir. 1971); United States v. Cox, 462 F.2d 1293, 1303–1304 (8th Cir. 1972).

7. The rationale of Katz v. United States, *supra*, n. 5, establishes that a wiretap is not prohibited by the Constitution merely because there was no specific statutory authority for its issuance. Appellant does not contest that, in this case, there was compliance with the requirements of the Fourth Amendment. The application for the order authorizing the wiretap—the constitutional equivalent of an application for a search warrant—demonstrated the existence of adequate probable cause; the order itself satisfied the particularity requirements of the Fourth Amendment; and the relevant intercepted conversations were among those specifically authorized to be overheard. Appellant does not argue to the contrary. There was no invasion of appellant's right "to be secure . . . against unreasonable searches and seizures. . . ."

8. The Second Circuit considered the standing issue in United States v. Tortorello, *supra*, n. 6. Its resolution of the issue was predicated on the fact that § 605 of the Federal Communications Act of 1934 (47 U.S.C. § 605) had been amended by § 803 of Title III. Prior to that amendment, the wiretap before them would have been unlawful and the evidence obtained thereby inadmissible. See Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126. Since the evidence which led to appellant's conviction was rendered admissible by § 803 of Title III, the Court held that he had standing to at-

rules of constitutional adjudication, he is not entitled to raise such an objection.[9] Moreover, the Supreme Court has recently admonished us to construe exceptions to the traditional rules narrowly. Thus, in Broadrick v. Oklahoma, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830, the Court stated: "Application of the overbreadth doctrine . . . is, manifestly, strong medicine. It has been employed by the Court sparingly and only as a last resort." 413 U.S. at 613, 93 S.Ct. at 2916.[10] Similarly, it appears that traditional rules should normally apply to a challenge based on grounds of vagueness.[11]

tack the constitutionality of the entire Title on its face. See 480 F.2d at 772.

We cannot accept this reasoning. Title XI of the Crime Control Act consists in its entirety of a separability provision, which expresses Congress' intent to save the Act from a determination of total invalidity. While there is authority for the view that such a provision cannot be completely dispositive, see Carter v. Carter Coal Co., 298 U.S. 238, 312–313, 56 S.Ct. 855, 80 L.Ed. 1160, to grant standing upon the Second Circuit's rationale, it would be necessary to hold that the separability provision does not apply to the various parts of Title III. We believe such a holding would be unwarranted. The amendment to the Federal Communications Act is contained in a separate section which does not constitute a part of the newly enacted Chapter 119 of the Criminal Code; that chapter contains the provisions challenged by appellant as unconstitutional. More fundamentally, even though the amendment to the Federal Communications Act was adopted as a part of a comprehensive piece of legislation substituting a lesser prohibition against wiretapping for the previous total prohibition, invalidation of Chapter 119 would not require that the amendment also be stricken down. For surely there is nothing in the Constitution that would prevent Congress from repealing every statutory prohibition against electronic eavesdropping and leaving only the Constitution itself as a safeguard against its abuse.

9. The classic statement of the requirements imposed by the judiciary on itself before it will undertake the weighty function of constitutional adjudication is probably Mr. Justice Brandeis' concurring opinion in Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 345–348, 56 S.Ct. 466, 80 L.Ed. 688. The fifth criterion enunciated therein is that "The Court will not pass upon the validity of a statute upon complaint of one who fails to show that he is injured by its operation." Id. at 347, 56 S.Ct. at 483.

This principle ordinarily applies in Fourth Amendment cases. For although the enforcement of the exclusionary rule testifies to the importance of vindicating rights protected by the Fourth Amendment, it is generally accepted that only a person whose own interest in privacy or property has been invaded may invoke the benefit of that rule. Cf. Alderman v. United States, 394 U.S. 165, 171–176, 89 S.Ct. 961, 22 L.Ed.2d 176.

10. The Court described traditional doctrine as follows:

"Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. See, e. g., Austin v. Aldermen, 7 Wall. 694, 698–699 [19 L.Ed. 224] (1869); Supervisors v. Stanley, 105 U.S. 305, 311–315 [26 L.Ed. 1044] (1881); Hatch v. Reardon, 204 U.S. 152, 160–161 [27 S.Ct. 188, 190–191, 51 L.Ed. 415] (1907); Yazoo & M. V. R. Co. v. Jackson Vinegar Co., 226 U.S. 217, 219–220 [33 S.Ct. 40, 41, 57 L.Ed. 193] (1912); United States v. Wurzbach [280 U.S. 396], at 399 [50 S.Ct. 167, at 169, 74 L.Ed. 508]; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 513 [57 S.Ct. 868, 874, 81 L.Ed. 1245] (1937); United States v. Raines, 362 U.S. 17 [80 S.Ct. 519, 4 L.Ed.2d 524] (1960). A closely related principle is that constitutional rights are personal and may not be asserted vicariously. See McGowan v. Maryland, 366 U.S. 420, 429–430 [81 S.Ct. 1101, 1106–1107, 6 L.Ed.2d 393] (1961). These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws." 413 U.S. at 610–611, 93 S.Ct. at 2915.

11. "To be sure there are statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain. The hard-core violator concept makes some sense with regard to such statutes." Smith v. Gogren, 415 U.S. 566, 577, 94 S.Ct. 1242, 1249, 39 L.Ed.2d 605 (1974). Since the Court prefaces the quoted language by defining a "hard core violator" as one "to whom the statute was not vague, whatever its implications for those engaged

Nevertheless, in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040, the Court allowed a facial challenge to the validity of a statute authorizing electronic eavesdropping. In support of its action, the Court said only the following:

"Since petitioner clearly has standing to challenge the statute, being indisputably affected by it, we need not consider either the sufficiency of the affidavits upon which the eavesdrop orders were based, or the standing of petitioner to attack the search and seizure made thereunder."

388 U.S. at 55, 87 S.Ct. at 1882. While this sentence adequately explains why petitioner had standing under Article III of the Constitution, see, *e. g.*, Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, it does not explain why petitioner was entitled to bypass the question of the constitutionality of the statute as applied. See United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524. Notwithstanding the critical comments on the standing issue found in the separate opinions of Mr. Justice Stewart,[12] Mr. Justice Black,[13] Mr. Justice Harlan,[14] and Mr. Justice White,[15] the majority neither

in different conduct," we infer that the Court might require a litigant objecting to the invalidity of a statute on account of vagueness to allege that the statute was vague as to his conduct.

12. "The issue before us, as Mr. Justice White says, is 'whether *this* search complied with Fourth Amendment standards.' For me that issue is an extremely close one in the circumstances of this case. It certainly cannot be resolved by incantation of ritual phrases like 'general warrant.' Its resolution involves 'the unavoidable task in any search and seizure case: was the particular search and seizure reasonable or not?'" 388 U.S. at 68–69, 87 S.Ct. at 1888 (concurring opinion).

13. "I agree with my Brother White that instead of looking for technical defects in the language of the New York statute, the Court should examine the actual circumstances of its application in this case to determine whether petitioner's rights have here been violated. That to me seems to be the unavoidable task in any search and seizure case: was the particular search and seizure reasonable or not? . . . Certainly a search and seizure may comply with the Fourth Amendment even in the absence of an authorizing statute which embodies the Amendment's requirements. Osborn v. United States, 385 U.S. 323 [87 S.Ct. 429, 17 L.Ed.2d 394], upon which the Court so heavily relies, is a good example of a case where the Court sustained the tape recording of a conversation by examining the particular circumstances surrounding it, even though no federal statute prescribed the precautions taken by the district judges there." 388 U.S. at 82–83, 87 S.Ct. at 1895 (dissenting opinion).

14. "The Court declares, without further explanation, that since petitioner was 'affected' by § 813–a, he may challenge its validity on its face. Nothing in the cases of this Court supports this wholly ambiguous standard; the Court until now has, in recognition of the intense difficulties so wide a rule might create for the orderly adjudication of constitutional issues, limited the situations in which state statutes may be challenged on their face. There is no reason here, apart from the momentary conveniences of this case, to abandon those limitations: none of the circumstances which have before properly been thought to warrant challenges of statutes on their face is present, cf. Thornhill v. Alabama, 310 U.S. 88, 98 [60 S.Ct. 736, 742, 84 L.Ed. 1093], and no justification for additional exceptions has been offered. See generally United States v. National Dairy Products Corp., 372 U.S. 29, 36 [83 S.Ct. 594, 599, 9 L.Ed.2d 561]; Aptheker v. Secretary of State, 378 U.S. 500, 521 [84 S.Ct. 1659, 1671, 12 L.Ed.2d 992] (dissenting opinion). Petitioner's rights, and those of others similarly situated, can be fully vindicated through the adjudication of the consistency with the Fourteenth Amendment of each eavesdropping order." 388 U.S. at 90–91, 87 S.Ct. at 1899 (dissenting opinion).

15. "This case boils down, therefore, to the question of whether § 813–a was constitutionally applied in this case." 388 U.S. at 108, 87 S.Ct. 1909.
"The question here is whether *this* search complied with Fourth Amendment standards." *Id.* at 111, 87 S.Ct. 1911 (dissenting opinion).

identified the basis for its exception to traditional practice,[16] nor indicated whether a litigant may challenge a statute authorizing electronic eavesdropping no matter how tangential the statute's impact may be on his own constitutional rights.[17]

■ The disposition of the standing issue in *Berger* would appear to be a departure from accepted tradition,[18] and somewhat inconsistent with *Broadrick*. Nevertheless, since *Broadrick* did not specifically disapprove of *Berger*, and since we are not sure *Berger* can fairly

16. One commentator suggested the following rationale:

"The majority's sole justification for construing the statute on its face rather than as applied to the defendant is its bald statement that 'petitioner clearly has standing to challenge the statute, being indisputably affected by it . . . .' Previously the Court had judged statutes on their face in cases involving freedom of expression, where the very existence of the statute can inhibit the communication of ideas. But in other areas the Court has usually dealt with a law as applied in order to avoid deciding constitutional issues unnecessarily and because dealing in abstractions often leads to 'sterile conclusions unrelated to actualities.' Indeed, the *Berger* opinion itself is often too general to give specific guidance to those who now seek to draft a constitutional eavesdropping statute. The majority also fails to give any guidance on questions raised by the facts of the case and discussed by the dissents, such as who has standing to challenge the legality of an eavesdrop, what constitutes probable cause for an eavesdrop order, and what rules govern the use of the fruits of an illegal eavesdrop.

"It might be argued in support of the Court's action, however, that eavesdropping itself is an unconstitutional restraint on speech, creating an atmosphere in which individuals are reluctant to speak freely even in private. Although the case was decided on fourth rather than first amendment grounds, this 'penumbral' influence of the first amendment could provide a basis for judging the statute on its face. Further, an overbroad eavesdrop statute would seem to have the same 'chilling effect' on privacy that an overbroad picketing statute has on speech: the very knowledge that the police are authorized to eavesdrop without adequate judicial supervision will impair the value of the home or office as a place of refuge even if the police do not abuse their power. In addition, just as in free speech cases it is by no means certain that all important issues would be litigated if a case-by-case approach were required, the secrecy of eavesdrops makes it unlikely that issues arising out of unproductive eavesdrops would ever reach court." The Supreme Court, 1966 Term, 81 Harv.L.Rev. 69, 188 (1967) (Footnotes omitted).

17. In *Berger*, unlike the present case, the petitioner advanced a strong claim of unconstitutional application as to himself. Indeed, the unconstitutionality of the wiretap at issue was the basis for Mr. Justice Stewart's concurrence in the result. The application of the New York statute in that case had permitted a recording device to be installed in an attorney's office for a period of 60 days. In the face of such a strong claim of impermissible application—one that either constituted the use of a general warrant forbidden by the Fourth Amendment, as the majority held, or at the very least closely approached the outer limits of the range in which a statute authorizing electronic eavesdropping might be applied constitutionally—the Court could with more legitimacy express an opinion on the validity of the entire statutory scheme before it than if the particular litigant before it had no arguable basis for claiming that his own constitutional rights had been impaired but was merely positing quite different hypothetical situations in which abuses might conceivably occur.

18. The reasons why hypothetical adjudication of constitutional issues is undesirable are applicable to a "facial" analysis of this statute. For, in order to meet appellant's principal argument that authorization of electronic eavesdropping for a continuous period of 30 days is comparable to a general warrant and not constitutionally distinguishable from the 60-day authorization condemned in *Berger*, see United States v. Whitaker, 343 F.Supp. 358, 365–366 (E.D.Pa.1972), rev'd, 474 F.2d 1246 (3rd Cir. 1973), we would be forced either (a) to decide whether validity must rest on the difference between 60 days and 30 days, (b) attempt to evaluate the efficacy of the provisions for "automatic" termination of authorizations under a variety of conceivable circumstances, or (c) attempt to predict the frequency with which judges may impose a time limit less than the maximum of 30 days permitted on the basis of a single showing of probable cause.

be distinguished from the present case,[19] we conclude that it is our duty to respect it as a viable precedent on the question of standing and to entertain appellant's challenge.

In a sense, deciding to entertain a facial challenge to a statute such as Title III is more easily said than done. For this statute merely provides safeguards for a procedure which might legitimately be undertaken without any statutory authorization at all. See Katz v. United States, 389 U.S. 347, 354–356, 88 S.Ct. 507, 19 L.Ed.2d 576.[20] Presumably, a declaration of facial invalidity would mean that even though the application of the statute in this and in comparable cases is permissible, there is a range of applications permitted by the statute which exceeds constitutional limitations. But what is the appropriate range? What, in other words, is the test for declaring an authorizing statute facially unconstitutional?

If we were to conclude, as apparently Judge Aldisert does in his careful opin-

ion in United States v. Cafero, 473 F.2d 489 (3rd Cir. 1973), that compliance with this statute will make it virtually impossible to violate the Fourth Amendment rights of any citizen, then surely the statute must be upheld. On the other hand, if we should conclude that there is a significant possibility that district judges will from time to time grant overly broad intercept authority without departing from any of the statutory safeguards, does it follow, as Judge Lord reasoned in *Whitaker*, that the entire statute must fall?[21] Or are we to engage in a form of balancing, attempting to weigh the probable number of impermissible applications of the statute against the number of cases in which it will be applied constitutionally, and then express an empirical judgment about its facial validity?

■ We find none of the above approaches acceptable and suggest, somewhat tentatively, a slightly different formulation.[22] Realistically, we think

---

19. The Supreme Court in *Berger* did not explicitly rely upon the strength of petitioner's own Fourth Amendment claim in permitting challenge to the New York statute on its face.

20. Ordinarily, cases in which facial constitutional adjudication has been considered appropriate have involved criminal statutes, or at least disciplinary sanctions. In such cases, the consequence of a judicial determination of facial unconstitutionality is unambiguous. Similarly, if Congress had no power to authorize the practices described in the legislation, a ruling that the statute is facially invalid would be understandable. See, e. g., Schechter Poultry Corp. v. United States, 295 U.S. 495, 550, 55 S.Ct. 837, 79 L.Ed. 1570. But the analysis in *Katz* makes it clear that this is not such a case. It is therefore difficult to know precisely what a declaration that this statute is facially unconstitutional would mean.

21. We believe the crux of Judge Lord's opinion is found in the following passage: "If a judge exercised certain discretionary powers which the Act gives him, the order may not violate the Fourth Amendment. The difficulty, though, is precisely that those powers are discretionary and not mandated. It follows that the Act does not command a constitutional order; it permits an unconstitu-

tional one." United States v. Whitaker, *supra* n. 18, 343 F.Supp. at 363.

22. The majority in *Berger* did not specifically announce the standard that they employed. The explanation may lie in the fact that the opinion, when announced, was subject to the interpretation that the Court intended to forbid all wiretapping of telephones. In his dissent in Katz v. United States the following Term, Mr. Justice Black observed:

"... [T]oday's opinion differs sharply from Berger v. New York, 388 U.S. 41 [87 S.Ct. 1873, 18 L.Ed.2d 1040], decided last Term, which held void on its face a New York statute authorizing wiretapping on warrants issued by magistrates on showings of probable cause. The *Berger* case also set up what appeared to be insuperable obstacles to the valid passage of such wiretapping laws by States. The Court's opinion in this case, however, removes the doubts about state power in this field and abates to a large extent the confusion and near-paralyzing effect of the *Berger* holding."
389 U.S. at 364, 88 S.Ct. at 518. See also Kitch, Katz v. United States: The Limits of the Fourth Amendment, 1968 S.Ct.Rev. 133, 143: "In *Katz* itself the Court proceeded to make clear that, contrary to the implications

we must assume with Judge Lord that from time to time the statute will be applied unconstitutionally in specific cases and, indeed, that over the years the number of such applications may be significant. On the other hand, now that judges have the benefit of the opinion in *Berger*, reinforced by the statutory admonitions set forth in some detail after careful consideration of the implications of *Berger* by Congress, we think it is proper to presume that the statute will generally be applied in a constitutional manner.

In *Berger* the Supreme Court could properly have regarded the New York statute as giving rise to a quite different presumption—one under which it might reasonably have been presumed that the normal administration of the Act would routinely lead to the entry of authorizations for 60-day continuous wiretaps. Such blanket authority to issue general warrants may be considered offensive to the Fourth Amendment without undermining the normal presumption of constitutionality to which

we believe this carefully conceived Act of Congress is entitled.

We cannot say that the normal application of Title III will ordinarily lead to results condemned by the Fourth Amendment.[23] Moreover, we are conscious that, even if the statute is susceptible of unconstitutional application, it does contain additional protections, not necessarily mandated by the Constitution, which would be forfeited by a holding of facial invalidity.[24]

 Accordingly, without further enlarging upon the constitutional discussion in the many other judicial opinions analyzing Title III, we hold that it is not unconstitutional on its face.

## II.

The statute provides that every order authorizing an intercept shall contain a requirement that the authorization be executed as soon as practicable and "shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter."[25] In this case, the or-

of its decision in Berger v. New York, electronic surveillance under limited conditions could be authorized by a warrant." (Footnotes omitted.) That such an interpretation of the opinion was reasonable is bolstered by the fact the petitioner specifically argued such a contention to the Supreme Court. Point I of his Brief was:

"A. Except perhaps for situations of supreme public necessity involving the physical safety of the nation or of a particular populated community or vital public installation, and even then only for purposes of preventive security action by responsible governmental agencies at the highest level rather than for the obtaining of prosecutorial evidence, and even in such supreme emergency situations only when the action is taken under federal rather than state authority, no conceivable system of judicially permissive trespassory or other physically intrusional electronic eavesdropping—including 'electronically' or 'acoustically' intrusional methods involving no 'tangible' physical trespass or intrusion in the conventional senses understood by persons who are not trained physicists—can be constitutional under the Fourth, Fifth, Ninth and Fourteenth Amendments."
Brief for Petitioner at 15.

23. Perhaps the lynchpin of the majority's analysis in *Berger* appears in the paragraph in 388 U.S. at 58–60, 87 S.Ct. 1873. We note that the procedural laxity therein condemned has been avoided in Title III.

24. The mere fact that the statute does not require notice to be given to everyone whose conversations have been overheard does not render it unconstitutional. Unlike the New York statute condemned in *Berger*, see 388 U.S. at 60, 87 S.Ct. 1873, § 2518(8)(d) requires that those individuals named in the order be given notice within 90 days after its termination. This is consistent with ordinary Fourth Amendment practice under which notice is given to those whose premises are searched. See Rule 41(d), Fed.R. Crim.P.

25. We quote the entire text of § 2518(5), supplying emphasis to the portion relevant to appellant's claim:
"No order entered under this section may authorize or approve the interception of any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. Extensions of an order may be granted, but only upon application for an extension made in

der authorizing the interception contained a provision directing, in the language of the statute, that the interception of such communications be minimized. Appellant claims that, if he had been accorded a hearing on the issue in the district court, he might have established that the government violated its duty to minimize the interception of innocent conversations.[26] He therefore argues that the district court erred in failing to hold such a hearing.

◼ We are not at all sure that appellant made a sufficient factual showing to require the Court to hold a hearing to determine whether the government violated the minimization requirement in the order. But we assume *arguendo* that such a breach occurred. On that assumption we must decide whether appellant has standing to complain. The Second Circuit has held that only a subscriber to a telephone has such standing. United States v. Poeta, 455 F.2d 117, 122 (1972). A more liberal interpretation of the statutory purpose would suggest that Congress also intended to protect the privacy interests of members of

the subscriber's family, possibly other regular users of the telephone, and conceivably any casual caller engaging in innocent conversation. But appellant fits none of these descriptions. He was a party to three long distance conversations with John Haygood, the subscriber, each of which related to the heroin transactions which were the specific target of the intercept order. Accordingly, we conclude that appellant's rights were not infringed even if the government failed to carry out its obligation to minimize. *Cf.* United States v. Cox, 462 F. 2d 1293, 1301–1302.[27]

### III.

◼ Finally, there is no merit to the argument that a defendant has a constitutional right to have immunity conferred upon a defense witness who exercises his privilege against self-incrimination. The only support for appellant's argument is found in a footnote to an opinion holding that Congress has not delegated unlimited power to the judiciary to grant immunity. Earl v. United States, 124 U.S.App.D.C. 77, 361 F.2d 531, 534 (1966). The footnote which

accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted and in no event for longer than thirty days. *Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter,* and must terminate upon attainment of the authorized objective, or in any event in thirty days."

26. In United States v. Kahn, 415 U.S. 143, 154, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974), the Court described this requirement as a duty "to execute the warrant in such a manner as to minimize the interception of any *innocent conversations.*" (Emphasis added.) Without the guidance we might have had some uncertainty as to the meaning of the words "communications not otherwise subject to interception" because they might have been interpreted literally to encompass

noninnocent conversations as well, inasmuch as even a noninnocent conversation would not be subject to interception other than pursuant to a valid order. Such a literal reading, however, would not effectuate any identifiable legislative objective. We assume, therefore, that the agents were obligated to intercept as few "innocent conversations" as possible consistent with their primary mission of obtaining evidence of the criminal activity described in the warrant. When their mission is kept in mind, the term "innocent" may perhaps be further limited to those which are not relevant in the sense that they are not likely to lead to the discovery of any searched-for evidence. The nature of the duty to minimize may vary from case to case and, therefore, conceivably in some intercept orders the trial judge should do more than merely parrot the language of a somewhat ambiguous statutory provision.

27. Since the right Congress sought to protect is a right to privacy, this analysis is not inconsistent with Mr. Justice Harlan's dissenting opinion in *Berger,* 388 U.S. at 101–104, 87 S.Ct. 1873.

suggests that a serious problem might exist if, in the same case, the government obtained critically favorable testimony by granting immunity but refused the same assistance to a defendant, is inapplicable because in the case before us the prosecution did not secure any of its evidence by means of an immunity grant.[28]

The judgment is

Affirmed.

28. The witness Harden anticipated leniency but received no grant of immunity.