Virginia R. HERZBRUN et al., Plaintiffs-Appellees and Appellants,

v.

MILWAUKEE COUNTY et al., Defendants-Appellants and Appellees.

Nos. 72–1625, 72–1626.

United States Court of Appeals, Seventh Circuit.

Argued June 18, 1973.

Decided Oct. 17, 1974.

Rehearing Denied Nov. 15, 1974.

Stevens, Circuit Judge, concurred with opinion.

John S. Williamson, Jr., Milwaukee, Wis., for Virginia Herzbrun.

Robert G. Polasek, Asst. Corp. Counsel, Milwaukee County, Milwaukee, Wis., for Milwaukee County.

Before KILEY, Senior Circuit Judge,* and FAIRCHILD and STEVENS, Circuit Judges.

FAIRCHILD, Circuit Judge.

The individual plaintiffs are employees of the Department of Public Welfare of Milwaukee County, Wisconsin. They brought action under 42 U.S.C. § 1983 against the county and a number of its officers to set aside the discharge of plaintiff Virginia Herzbrun and the suspensions of other employee plaintiffs.[1] The district court decided in favor of plaintiffs, declaring the discharge and suspensions void, ordering backpay and other relief, and enjoining defendants from acting against the employees on the basis of the charges involved in the action. Defendants appealed, and plaintiffs cross-appealed from denial of attorneys' fees.

Plaintiffs have Civil Service type tenure pursuant to Sections 63.01–63.17, Wis.Stats. They may not be removed except in accordance with those provisions, although they may be suspended for not more than ten days. Sec. 63.10 calls for a specific complaint by the chief executive officer of a department when he believes that an employee "has acted in such a manner as to show him to be incompetent to perform his duties or to have merited demotion of dismissal." Notice and hearing are required, and "At the termination of the hearing the commission shall determine whether or not the charge is well founded and shall take such action by way of suspension, demotion, discharge or reinstatement, as it may deem requisite and proper under the circumstances and as its rules may provide." Under Sec. 63.-14(1), "no factor or influence other than the fitness of a person to perform the duties of the office or position in which he is acting or employed, . . . shall affect the determination of . . . suspensions or discharges. . . . ." Sec. 63.02 requires the commissioners to adopt rules and regulations.

The Commission's Rule VII, Section 4 is entitled "Cause for Suspension, Demotion, or Discharge," Subsec. (1) provides, in part: "The following are declared to be cause for suspension, demotion, or Discharge." Subsec. (1) proployee from the classified service of the

* Judge Kiley indicated an intention to approve this opinion before he died on September 6, 1974.

1. Local 594, a union of public welfare employees, is also a plaintiff. Defendants include the deputy director of the Department, and the chief examiner and members of the county Civil Service Commission.

County of Milwaukee, though charges may be based upon causes and complaints other than those here enumerated, namely:

.   ·   .      .      .      .      .

"(k) is guilty of acts or omissions unbecoming an incumbent of the particular office or position held, which render his suspension, demotion, or discharge necessary or desirable for the economical or efficient conduct of the business of the county or for the best interest of the county government."

Paragraph (k) is here challenged as vague and overbroad.

On August 24, 1970, defendant Silverman made written charges against plaintiff Herzbrun. He charged that she had violated paragraphs (1) and (1)(k) of the Rule, and, specifically, that on August 21 she

"(1) Methodically interfered with the telephonic communications system at the Welfare Center Building by removing telephone receivers from their cradles and by inserting broken pencils therein in the manner hereinafter described, thereby creating a 'busy' line at the central switchboard resulting in a major backup of incoming calls for the reason that the central switchboard could not be cleared to service them.

"(2) That such conduct effectively destroyed the ability of internal departments to communicate with each other or to the outside for the reason that the number of phones in various service blocks apparently in use as a result of such conduct exceeded the maximum capacity of those blocks and made all other phones in the block appear dead.

"(3) That she counseled others to act in similar fashion and as a result phones throughout the Welfare Center Building were de-activated by the removal of the receivers from their cradles and by the placement of broken pencils, filter cigarette ends, folded paper, metal clips and other objects which when properly positioned held the receiver, while partially in its cradle, away from the disconnect buttons so that the phone appeared to be in service but in fact was not.

"(4) That such conduct persisted throughout the day of the 21st of August despite repeated attempts by supervisory and other personnel to clear the lines by replacing the telephone receivers in their cradles and removing foreign objects therefrom.

"(5) That such deliberate and persistent sabotage of the communications system was intended to and did result in the substantial isolation of the Welfare Center from inside and outside communication and prevented the department from carrying on its functions which often involve emergency situations requiring immediate response and which always involve the needs of the people whom it is the mission of the agency to serve."

A hearing was held August 31. The Commission made its finding and decision as follows:

"We further find from the evidence and testimony presented at the hearing that the charges so proven are sufficient to and do justify this Commission in its judgment to discharge Virginia R. Herzbrun from the classified service of Milwaukee County under authority of Section 4, Rule VII of the Milwaukee County Civil Service Rules and Section 63.10, Wisconsin Statutes. Said Virginia R. Herzbrun is hereby discharged from the classified service."

Mrs. Herzbrun was president of the union local. The labor agreement with the county required the county to provide bulletin boards for notices regarding union affairs, but provided for removal, on notice from the employer, of material deemed libelous and the like. During the previous week there had been a dispute concerning cartoons posted on the boards and deemed by management to be improper under the agreement. As a result, management removed the boards the night of August 20. Employees were angered, and disrupted telephone communication for several hours in the manner described.

At the hearing, Mrs. Herzbrun minimized her responsibility for the disruption, testifying she was not in control of the situation, and had attempted to discourage others from more violent measures. There was support in the record for the charges, however, and we interpret the findings of the commission as sustaining the charge of active participation and counseling of others by her.

After the discharge of Mrs. Herzbrun, Mr. Silverman suspended the other plaintiffs for periods of ten days or less, citing Rule VII, Section 4(1)(k) in each notice.

█ The district court was of the opinion that although plaintiffs' conduct was probably not protected by the First Amendment,[2] plaintiffs nevertheless had standing to challenge paragraph (k) as vague and overbroad, and that the paragraph is unconstitutional for those reasons. In a case involving events preceding those in this case, but decided after the events and before the decision in this case, the district court held the paragraph unconstitutionally vague and overbroad. Zekas v. Baldwin, 334 F. Supp. 1158 (E.D.Wis.1971). In Zekas, the predecessors of defendants were enjoined from using paragraph (k) against Zekas on account of his public statements and participation in a demonstration.

██ It seems to us there can be little question that an employee's deliberate promotion of and participation in a massive and prolonged disruption of the telephone communication system of a very large departmental office is "hard core" conduct which any reasonable person must know would be cause for discipline or dismissal from employment whether described in a rule or not. Plaintiff Herzbrun, found on sufficient evidence to have engaged in conduct so clearly within paragraph (k), however narrowly construed, does not have standing to challenge paragraph (k) for vagueness, in ordinary due process terms. Broadrick v. Oklahoma, 413 U.S. 601, 608, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). See Parker v. Levy, 417 U.S. 733, 754–757, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); United States v. Ramsey, 503 F.2d 524, p. 527 (7th Cir. No. 73–1580, 1974). We do not understand that the other plaintiffs, who were merely suspended, claim that their conduct was significantly different in this respect from Mrs. Herzbrun's. The conduct of plaintiffs who were permitted to challenge a somewhat similar rule for vagueness in Bence v. Breier, 501 F.2d 1185 (7th Cir. 1974) consisted of written expression of opinion and was surely not "hard core."

Turning now to the challenge for overbreadth: As pointed out in *Broadrick*, at p. 612, 93 S.Ct. at p. 2916, "the Court has altered its traditional rules of standing to permit—in the First Amendment area—'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' Dombrowski v. Pfister, 380 U.S. [479] at p. 486 [85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965)]. Litigants, therefore, are permitted to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." See, United States v. Dellinger, 472 F.2d 340, 355–357 (7th Cir. 1972). Cf. a discussion of the appropriate analysis of a challenge for overbreadth on Fourth Amendment rather than First Amendment grounds. United States v. Ramsey, 503 F.2d 524, (7th Cir. No. 73–1580, 1974).

Challenge for First Amendment overbreadth has been upheld where the sanc-

---

2. Although the action taken was concerted response in a dispute with management about the bulletin boards, we think the physical interference with communication and the conduct of public business was too deliberate, substantially disruptive, and prolonged to be classified as symbolic speech and protected expression.

tion threatened by official rule was discipline of a public employee as well as where it was a criminal penalty. Muller v. Conlisk, 429 F.2d 901 (7th Cir. 1970). But see Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

Several decisions by the Supreme Court, reached since the decision by the district court herein, and, indeed since submission of this appeal, require careful scrutiny with respect to an overbreadth challenge here.

In Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the Supreme Court considered whether the standards established under the Lloyd-LaFollette Act, 5 U.S.C. § 7501, for the removal of nonprobationary federal employees, are facially overbroad. Subsec. (a) of Sec. 7501 provides that "[a]n individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7501(a). This language is further defined by Civil Service Commission and OEO regulations providing that "employees 'avoid any action . . . which might result in, or create the appearance of . . . [a]ffecting adversely the confidence of the public in the integrity of (OEO and) the Government,' and that employees not 'engage in criminal, infamous, dishonest, immoral, or notoriously disgraceful or other conduct prejudicial to the Government.'" Arnett v. Kennedy, 416 U.S. p. 142, 94 S.Ct. p. 1638.

The Court noted the difficulties inherent in drafting a "general standard, not for the purpose of defining criminal conduct, but in order to give myriad different federal employees performing widely disparate tasks a common standard of job protection," and emphasized that "the Act is not directed at speech as such, but at employee behavior, including speech, which is detrimental to the efficiency of the employing agency." 416 U.S. p. 159, 162, 94 S.Ct. pp. 1647, 1648. The Court concluded that the stat-

utory and regulatory scheme at bar was not facially overbroad.

Comparing the language utilized in the Milwaukee County rule with that considered in Arnett v. Kennedy, we cannot conclude that the county rule is significantly less precise or substantially more broad in terms of arguable applicability to constitutionally protected speech. Paragraph (k) applies to acts or omissions which are "unbecoming an incumbent of the particular office or position held." The specification is further narrowed by the requirement that the act or omission render the discipline "desirable for the economical or efficient conduct of the business of the county or for the best interest of the county government." Sec. 63.14(1), Wis.Stats., requires that no factor or influence other than the fitness of a person to perform the duties shall affect suspensions or discharges. We see no significant difference between the predicate for discharge in *Arnett* and that in paragraph (k), in terms of the scope of protected conduct arguably within their terms.

We note, though the context is quite dissimilar, that the Supreme Court recently rejected the contention that Articles 133 & 134 of the Uniform Code of Military Justice (providing for punishment for "conduct unbecoming an officer and a gentleman" and proscribing "all disorders and neglect to the prejudice of good order and discipline in the armed forces") are facially invalid because of their overbreadth. Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L. Ed.2d 439 (1974). See Secretary of the Navy v. Avrech, 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974).

██ In deciding to reject the overbreadth challenge in *Arnett*, the Court held "that the language 'such cause as will promote the efficiency of the service' in the Act excludes constitutionally protected speech." 416 U.S. p. 162, 94 S.Ct. p. 1648. There has been no corresponding pronouncement by a Wisconsin court expressly with respect to para-

graph (k), although Wisconsin courts have often said, generally, that they must construe a statute so as to sustain its constitutionality if possible to do so. Building Height Cases, 181 Wis. 519, 527, 195 N.W. 544 (1923); State ex rel. Miller v. Manders, 2 Wis.2d 365, 373, 86 N.W.2d 469 (1957). The central justification for allowing challenges for overbreadth in the area protected by the First Amendment is a "juidcial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612, 93 S.Ct. at 2916. An authoritative limiting construction is significant in avoiding overbreadth. The dissenting justices in *Arnett* noted that the majority's pronouncement of exclusion of constitutionally protected speech is not really a limiting construction.[3] In terms of efficacy in avoiding a chilling effect, we do not deem this particular pronouncement in *Arnett* with respect to a federal statute and the absence of a similar pronouncement by a Wisconsin court with respect to paragraph (k) an adequate ground for distinguishing the cases.

In *Broadrick*, decided June 25, 1973, the Supreme Court recognized that the application of the First Amendment overbreadth doctrine is "strong medicine," and articulated the principle, applicable to some types of statutes, that overbreadth must not only be real but substantial as well. *Broadrick*, 413 U.S. at 613, 93 S.Ct. 2908.

The Court said, at p. 615, 93 S.Ct. at p. 2917:

"But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' towards conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. Cf. Alderman v. United States, 394 U.S. 165, 174–175, [89 S.Ct. 961, 22 L.Ed.2d 176] (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

As we understand this test of substantial overbreadth, when evaluating statutes covering both speech and unprotected conduct once a court determines that there is an area of possible impermissible applications, the court is to compare that area with the "plainly legitimate sweep" of the statute in order to determine that the former is substantial.

Paragraph (k) operates on "acts or omissions," which may include speech and writing, i. e., pure expression, and conduct demonstrating protest, as well as conduct in which expression is minimal. Under *Broadrick*, the fact that some pure expression or demonstration of protest which arguably is unbecoming an employee and meets the other standards of paragraph (k) may be constitutionally protected is not necessarily enough to sustain an overbreadth challenge. Rather a judgment must be made that the degree to which that may be true is sufficient to warrant the use of the "strong medicine."

It is clear that both the federal statute considered in Arnett v. Kennedy and

---

3. *Arnett*, dissenting opinion by Mr. Justice Marshall, 416 U.S. p. 206, 94 S.Ct. 1633.

the county rules before us here are directed at employee behavior including a wide spectrum of harmful, constitutionally unprotected conduct, not intended to convey any message and manifestly subject to state regulation. Nonetheless, the language of the rules is also susceptible to application in some circumstances where the First Amendment would protect the employee uttering criticism from discipline or discharge. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Although the courts may ultimately vindicate an employee who is dismissed for engaging in protected conduct, others who would engage in similar conduct may not do so for fear of risking their jobs. See Arnett v. Kennedy, 416 U.S. 134, p. 161, 94 S.Ct. 1633 (Marshall, Douglas & Brennan, JJ., dissenting).

■ Upon consideration of the rejection of the overbreadth challenge by the Supreme Court in *Arnett,* in an area so closely comparable to the one before us now, we consider ourselves required to reject the overbreadth challenge to paragraph (k), and leave "whatever overbreadth may exist [to] be cured through case-by-case analysis of the fact situations to which its sanctions, assertedly, may not be applied." *Broadrick,* 413 U.S. at 615–616, 93 S.Ct. at 2918.

■ We take note of but reject plaintiffs' contention that the judgment in *Zekas,* rendered while the present action was pending, including a declaration that paragraph (k) is in violation of the constitution, and not appealed from, binds the virtually identical defendants here by collateral estoppel. Although the district court referred to *Zekas* in the opinion in this case, it does not appear that plaintiffs raised the claim of estoppel in a pleading or motion. Moreover, present plaintiffs are different from the *Zekas* plaintiffs, and the Supreme Court has observed:

"Authorities have been more willing to permit a defendant in a second suit to invoke an estoppel against a plaintiff who lost on the same claim in an earlier suit than they have been to allow a plaintiff in the second suit to use offensively a judgment obtained by a different plaintiff in a prior suit against the same defendant." Blonder-Tongue v. University Foundation, 402 U.S. 313, 329–330, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971).

■ We conclude that the overbreadth challenge fails. We have previously indicated our assumption that the character of the conduct of plaintiffs other than Mrs. Herzbrun was the same, for the purpose of this case, as the conduct in which she was found to have engaged. If any other plaintiff deems himself in a position significantly to distinguish the facts of his conduct, such plaintiff will not be foreclosed from doing so on remand. We note, however, with respect to damages out of the treasury of Milwaukee County, as appear to have been awarded initially, 42 U.S.C. § 1983 does not make a county liable, and the district court had no jurisdiction of the complaint against the county under 28 U.S.C. § 1343. City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Hampton v. City of Chicago, Cook County of Illinois, 484 F.2d 602, 610 (7th Cir. 1973), cert. denied, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471. Except for Mrs. Herzbrun, the individual damages were far less than the jurisdictional amount under 28 U.S.C. § 1331.

■ Mrs. Herzbrun, individually, claims that her discharge, in contrast with the suspensions of others, denied her equal protection of the laws. We are unable to find that the difference in treatment was outside the broad range of discretion of the county officers.

In view of our disposition of defendants' appeal, we need not consider plaintiffs' appeal from the denial of attorney fees.

The judgment appealed from is reversed and the cause remanded for dismissal of the action unless an individual plaintiff demonstrates a right to proceed

further. The parties shall bear their own costs on appeal.

STEVENS, Circuit Judge (concurring).

With one reservation I concur in Judge Fairchild's opinion. I question whether these plaintiffs have standing to invoke the First Amendment as a bar to a disciplinary proceeding based on the kind of conduct disclosed by this record. That conduct was not even arguably communicative.[1]

Our interest in encouraging a free interchange of ideas and information provides the *raison détre* for oberbreadth adjudication. When rules dealing exclusively with communication have been attacked, the Supreme Court has not required the challenge to be made by a litigant who claims that his own activity was constitutionally protected.[2] In such cases the Court has concluded that the cost to society of permitting some un-protected speech to go unpunished was outweighed by the danger that protected speech might be deterred by an overly broad prohibition.[3]

The rationale of those cases may justify an overbreadth attack on some rules that prohibit both speech and nonexpressive conduct.[4] But if such an attack on a rule applicable both to speech and to nonexpressive conduct should be successful, the rationale for the exception would not necessarily justify a total invalidation of the mixed rule.[5] The interests protected by the First Amendment would be adequately vindicated by a holding that the rule is invalid insofar as it purports to prohibit or to regulate speech or expressive conduct.[6] The cost to society of permitting unprotected speech to go unpunished is acceptable and should be borne to avoid inhibiting protected speech; but our interest in freedom of speech does not justify in-

1. Indeed, it deliberately frustrated communication between persons in need of help and those employed by the State to serve them.

2. As a predicate for its overbreadth analysis in Gooding v. Wilson, the Court stated: "Section 26-6303 punishes only spoken words." 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408. Similarly, in his dissenting opinion in Karlan v. City of Cincinnati, 416 U.S. 924, 94 S.Ct. 1922, 40 L.Ed.2d 280 (1974), Mr. Justice Douglas prefaced his discussion of overbreadth by stating: "These cases all involve convictions under ordinances and statutes which punish the mere utterance of words . . . ."

3. "In such cases, it has been the judgment of this Court that the possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." Broadrick v. Oklahoma, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830.

4. "But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' towards conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining com-prehensive controls over harmful, constitutionally unprotected conduct." *Broadrick, supra*, 413 U.S. at 615, 93 S.Ct. at 2917.

5. It might be necessary to evaluate the importance of the "danger zone" in which protected expression might be inhibited. *See* Dombrowski v. Pfister, 380 U.S. 479, 494, 85 S.Ct. 1116, 14 L.Ed.2d 22. Since there is a sharper demarcation between expressive conduct and nonexpressive conduct than between protected speech and unprotected speech, prohibiting enforcement against any speech or expressive conduct would not, it seems to me, leave room for any significant danger zone in which protected speech would be deterred.

6. The holding in Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214, to the extent that it rests on the First rather than the Fourteenth Amendment, is not inconsistent with this analysis. For the Cincinnati ordinance which was held invalid on its face dealt exclusively with the right of assembly which, like the right to speak freely, is expressly protected by the First Amendment. The record in that case disclosed "that the appellant Coates was a student involved in a demonstration and the other appellants were pickets involved in a labor dispute." *Id.* at 612, 91 S.Ct. at 1687. They were all, therefore, engaged in a kind of expressive activity which, for the purpose of determining standing, might appropriately be treated as at least arguably protected by the First Amendment.

curring the cost of permitting harmful conduct to go unpunished if that conduct is not even arguably communicative and is plainly unprotected by the Constitution.

Since the overbreadth exception should not be enlarged beyond the reason for its existence, a successful overbreadth attack would be of no benefit to a litigant whose own conduct is entirely noncommunicative. In the case before us, even if we should conclude that a rule against "unbecoming conduct" contains an excessive threat to punish protected speech, in my judgment the appropriate relief would merely foreclose enforcement of that rule against speech or expressive conduct. Such relief would be of no benefit to plaintiffs whose own conduct was not even arguably communicative. I would therefore conclude that they do not have standing to challenge Rule VII, § 4(1)(k) on First Amendment grounds. However, since a majority of the panel has reached a contrary conclusion on this issue, I join in Judge Fairchild's opinion on the merits.